Marca GRAVES, et al., Plaintiffs,

v.

COUNTY OF DAUPHIN, Defendant.

No. 4:CV–95–1624.

United States District Court, M.D. Pennsylvania.

April 10, 2000.

James J. West, Harrisburg, PA, Adrian J. Moody, Moody & Anderson, P.C., Issac Green, Philadelphia, PA, for Marca M. Graves, Antoinette R. Trueitt, Laura Segarra, Debra C. Napper, Marshell L. Napper, Sherry L. Reiff, Dorothy R. Clemons, plaintiffs.

David A. Wion, Dauphin County Courthouse, Jeffrey L. Troutman, Asst. Solicitor, Dauphin County Solicitor's Office, Harrisburg, PA, A. Taylor Williams, Mary C. Keane, Administrative Office of PA Courts, Philadlephia, Kate L. Mershimer, U.S. Attorney's Office, Harrisburg, PA, for Horace A. Lowery, Supreme Court of the Commonwealth of Pennsylvania, defendants.

## MEMORANDUM

KANE, District Judge.

Presently before the Court is Defendant County of Dauphin's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. The parties have briefed the issues, and the motion is ripe for disposition.

## I. BACKGROUND

This sexual discrimination suit is unique both in its facts and in its progress through the courts. Over seven years ago, in January 1993, ten women employed in the chambers of District Justice Horace A. Lowery, seven of whom are Plaintiffs in this action, complained to the Dauphin County Court Administrator that they were being sexually harassed by the district justice himself. With a caveat from the Honorable Warren G. Morgan, President Judge of the Dauphin County Court, that the County was powerless to discipline Lowery, a committee was assembled to investigate the allegations. Their findings were provided to the President Judge and to the Judicial Inquiry and Review Board.

Thereafter, on March 30, 1993, Lowery notified two of the complaining clerks, Marca Graves and Sherry Reiff, that they were fired. The County Commissioners, however, refused to remove these women from the county payroll and instead transferred them to the County Personal Property Tax Department where they worked until after District Justice Lowery left office in December 1993. Thereafter, Graves and Reiff were transferred back to the office of the District Justice where the other five plaintiffs had continued in their assignments.

On September 26, 1995, Plaintiffs filed this sexual discrimination suit pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., naming as Defendants Horace A. Lowery, the Supreme Court of Pennsylvania, the Commonwealth of Pennsylvania, and the County of Dauphin. The Honorable James F. McClure, originally assigned to the matter, granted Plaintiffs' motion to dismiss the case against Horace A. Lowery, the Supreme Court of Pennsylvania, and the Commonwealth of Pennsylvania with prejudice.

As to the sole remaining Defendant, Dauphin County, Judge McClure granted the County's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) finding as a matter of law that Dauphin County could not be held liable as the Plaintiffs' "employer" or "co-employer". *See* Order dated April 8, 1996 at 3–4. On appeal, the Third Circuit reversed, holding that Plaintiffs' status as employees of the unified judiciary does not preclude a finding that the County may also share a co-employer or joint employer status with the courts. *See Graves v. Lowery,* 117 F.3d 723, 727 (3d Cir.1997). The Third Circuit found that Plaintiffs "alleged facts in their complaint, which, if true, could allow a jury to find that Dauphin County was the co-employer of [Plaintiffs]." *Id.* at 729. The Third Circuit remanded the matter for further proceedings consistent with its opinion.

By order dated October 28, 1998, Judge McClure transferred the case to the undersigned. Now this court is called upon to decide whether Plaintiffs have produced evidence sufficient to support their allegations so as to survive Defendant's motion for summary judgment on multiple grounds. For the reasons set forth below, Defendant's motion for summary judgment will be granted in part and denied in part.

In their complaint, Plaintiffs collectively allege, *inter alia,* that Lowery created a hostile work environment. (Pls.' Compl. ¶ 27.) Plaintiffs further allege that "It was explicit and implicit from the Defendant Lowery's conduct that he was making sexual demands on the Plaintiffs and that complying with those demands would be rewarded by promotion, better working conditions and other benefits that the Defendant Lowery was in a position to bestow and confer because of his supervisory authority over the Plaintiffs." (Pls.' Compl. ¶ 28.) Further, Plaintiffs together allege that following their complaints regarding Lowery to their office manager and the Court Administrator for Dauphin County, Justice Lowery "continued to harass the Plaintiffs and, in addition, took retaliatory action against them, including threatening their job security, issuing rep-

rimands and terminating some of the Plaintiffs." (*See* Pls.' Compl.¶ 35.) As a result, Plaintiffs allege they suffered severe emotional distress, anxiety, embarrassment, humiliation, physical injuries, lost wages, and other unspecified pecuniary and non-pecuniary loss. (*See* Pls.' Compl. ¶¶ 36–37.)

Individually, Graves alleges physical and verbal sexual harassment by Lowery and retaliation for filing a complaint against him. This retaliation allegedly included "sham and contrived verbal and written warnings as to her tardiness, attendance, and work quality" and culminated in the termination of her employment for the pretextual reason of absenteeism. (*See* Pls.' Compl. ¶¶ 41–45.) Plaintiff Trueitt alleges physical and verbal sexual harassment and retaliation in the form of "sham and contrived reprimands for negligence and poor quality work" for filing a complaint against him. (*See* Pls.' Compl. ¶¶ 46–49.) Plaintiff Segarra alleges racial and verbal sexual harassment and retaliation in the form of a warning for tardiness because she complained about Lowery. (*See* Pls.' Compl. ¶¶ 50–53.) Plaintiff Debra Napper alleges verbal sexual harassment and retaliation for filing a complaint against him in the form of denial of her request to leave work early, when another, non-petitioning employee was permitted to leave early. (*See* Pls.' Compl. ¶¶ 54–57.) Plaintiff Marshell Napper alleges physical and verbal sexual harassment and that Lowery told her she would not be fired, as others had been, because he "loved her." Plaintiff Marshell Napper further alleges that Lowery retaliated for her refusal of his sexual advances by ordering the office manager to closely supervise Plaintiff Marshell Napper, not allow Plaintiff Marshell Napper to handle customer service, and deny Plaintiff Marshell Napper's requests to leave work early. (*See* Pls.' Compl. ¶¶ 58–61.) Plaintiff Reiff alleges one incident of verbal sexual harassment and retaliation in the form of termination of her employment and disciplinary action for the pretextual reason of excessive absentee-

ism. (*See* Pls.' Compl. ¶¶ 62–65.) Plaintiff Clemons alleges one incident of physical sexual harassment. (*See* Pls.' Compl. ¶¶ 66–67.)

## II. SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis which would allow a reasonable fact-finder to return a verdict for the nonmoving party. *See id.* at 249, 106 S.Ct. 2505. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the nonmoving party. *See Fagan v. City of Vineland*, 22 F.3d 1296, 1299 (3d Cir. 1994) (in banc).

The moving party must show that there is "an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Then the nonmoving party may not simply sit back and rest on the allegations in its complaint, but must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. 2548 (internal quotations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that par-

ty's case and on which that party will bear the burden at trial." *Id.*

## III. DISCUSSION

Defendant moves for summary judgment on five bases. Defendant argues that there is no record evidence from which it might reasonably be concluded that Defendant was a co-employer of Plaintiffs under Title VII, or that Defendant was engaged in or responsible for actions constituting hostile environment sexual harassment. In addition, Defendant argues that this Court lacks jurisdiction to hear Plaintiffs' *quid pro quo* sexual harassment claims, that the pleadings and depositions do not show that Plaintiffs suffered *quid pro quo* sexual harassment, and that Plaintiffs' claims for punitive damages should be dismissed because it is a government entity.

### A. Defendant as Co–Employer under Title VII

█ In reviewing the record on Dauphin County's liability as a "co-employer," this Court is guided and bound by the decision of the Third Circuit in *Graves v. Lowery,* 117 F.3d 723 (3d Cir.1997). Based on the record evidence before it, as viewed in light of the Third Circuit's opinion in *Graves,* this Court concludes that a genuine issue of material fact remains such that a reasonable jury could find that Dauphin County was a co-employer under Title VII. Therefore, Defendant's motion for summary judgment on that issue will be denied.

As noted in the Third Circuit's opinion, Plaintiffs allege not only that Dauphin County funded their positions, but also that the County, through its actions and policies, exercised sufficient control over, and integral involvement in, their daily employment activities so as to incur liability as a co-employer. *See Graves,* 117 F.3d at 727–28. Specifically, the Third Circuit

listed several allegations of Plaintiffs in the instant case that, if proven, could allow a jury to find that Dauphin County was their co-employer. The key allegations cited by the Court were that Plaintiffs were covered by the County's sexual harassment policy and personnel policies; Plaintiffs were told that they were County employees; the County investigated Plaintiffs' allegations of Lowery's acts of sexual harassment; Plaintiffs were subject to termination and/or reinstatement by the County; and two of the Plaintiffs were hired by County officials to work in Magisterial District 12–1–04. *See id.* at 728–29. In short, only the last of these allegations is unsupported by record evidence; there is evidence in the record from which a reasonable jury could find each of the other listed allegations to ·be true, and thus evidence to support a finding that the the County was the Plaintiffs' co-employer.

The following record evidence supports Plaintiffs' contention that Dauphin County controlled significant terms and conditions of their employment. The County plays a substantial role in the hiring and firing of District Justice employees. While the authority to hire, fire and supervise the clerical staff in a District Justice's office resides in the District Justice, approval by the County Commissioners is necessary for a Justice to exercise his authority to hire or fire, unless the Justice obtains mandamus relief in court. (*See* Def.'s Facts ¶ 20; Pls.' Facts ¶ 20.) When hiring, District Justices obtain the files of clerical applicants from the County personnel office,[1] which handles the complete Human Relations and Personnel functions for County employees working in District Justice Offices. (*See* Pls.' Facts ¶ 19.) In addition to maintaining an active file of potential candidates, the County personnel office also is responsible for administering typing tests to clerical applicants. (*See* Bottanari Dep. at 54.) After selecting one

---

1. In some cases, Defendant notes, a District Justice may learn of a job candidate through channels other than the personnel department, in which case the referral from that department is omitted from the process described above. (*See* Def.'s Facts ¶ 22.)

of the applicants, the District Justice's office forwards the requisite County personnel forms to the Deputy Court Administrator for District Justices in Dauphin County, a Court employee. The Deputy Court Administrator, along with the personnel office, processes the paperwork and forwards the documentation to the County Commissioners for their approval. (*See* Def.'s Facts ¶ 22; Pls.' Facts ¶ 22.) The County Commissioners vote on any candidate selected by the District Justice, and the candidate's salary is approved by the Salary Board, which consists of three County Commissioners, the Controller, and in the case of Courts, the President Judge. (*See* Minnich Dep. at 7; Haste Dep. at 40.)

Moreover, the County Commissioners must act to ratify a District Justice's decision to fire clerical staff, a role which gives the Commissioners substantial influence over the significant personnel determination of whether those employees will lose their employment or not. For example, when Lowery fired Graves and Reiff, the County Commissioners refused to ratify Lowery's action. The Commissioners did not remove Graves or Reiff from the County payroll, but instead preserved their employment by reassigning them to another position within the County. (*See* Pls.' Facts ¶¶ 14–15.)

Further, action by the County Commissioners on personnel matters is necessary to effectuate changes in payroll. County personnel forms are used by the Court System to process personnel actions involving District Justice employees. The County Commissioners ordinarily vote on County personnel action forms submitted to them under the signatures of the District Justice and Deputy Court Administrator. (*See* Def.'s Facts ¶ 23.)

In addition, the Deputy Court Administrator for District Justices provides new hires with, among other documents, Dauphin County's Non–Union and Administrative Personnel Policies Handbook. (*See* Def.'s Facts ¶ 38.) There is a factual dispute over whether this handbook, at the time when the alleged sexual harassment occurred, had been adopted by the Court of Common Pleas of Dauphin County for Court employees. Defendant contends that it had not. (*See* Def.'s Facts ¶ 39.) Plaintiffs contend that the handbook had been adopted and applied to all County employees, including those working in the offices of District Justices, and that there has never been any writing indicating that the handbook does not apply fully to persons hired by District Justices. (*See* Pls.' Facts ¶¶ 38–39.)

Furthermore, Plaintiffs contend, and support through deposition testimony, that they followed the grievance procedure for Dauphin County employees. They addressed a letter enumerating their allegations to the Court Administrator, County Commissioners, Pennsylvania Human Relations Commission, and the Dauphin County Personnel Director. Shortly thereafter, the County convened a committee to conduct an investigation of these allegations and provided Plaintiffs with counseling services. (*See* Warren G. Morgan Dep. at 10.) This committee prepared and submitted a report to the President Judge outlining the findings of their investigation. (*See* Pls.' Joint Answer at ¶ 13.)

Other indicia of the County's control over Plaintiffs' employment are found in documents in the personnel files of Plaintiffs. *See* Pls.' Br. at Ex. 6. Plaintiffs were issued Dauphin County employee identification cards; all relevant tax documents indicate Dauphin County is their employer; Plaintiffs contributed a percentage of their salary to the Dauphin County Retirement Fund; Plaintiffs completed a "County of Dauphin Employment Application Form;" and Plaintiffs authorized the County personnel office to conduct a pre-employment investigation into their backgrounds. *See id.*

The County's entanglement in Plaintiffs' employment is evidenced in other ways as well. For example, the County awarded

five-year service pins to clerks of District Justices in an annual Dauphin County employee recognition ceremony conducted by the County Commissioners. (*See* Def.'s Facts ¶ 42; Pls.' Br., Ex. 6.) In addition, Plaintiffs often received missives from the Dauphin County personnel department with their County paychecks informing them of special offers and promotions available to them as County employees. (*See* Pls.' Br., Ex. 10.) In light of these facts, a jury might well conclude that the County controlled multiple aspects of Plaintiffs' employment privileges, another factor in determining whether an employer-employee relationship exists.

On the other hand, by no means did the County control all dimensions of Plaintiffs' employment. Day-to-day management of a District Justice's office, for example, is provided by the District Justice or his Office Manager; Dauphin County does not oversee the day-to-day operation of District Justice offices or the direction of District Justice employees. (*See* Def.'s Facts ¶ 44.) The office manager position, however, was created by the county's personnel director at the behest of the County Commissioners. (*See* Pls.' Facts ¶ 44.) Neither the Pennsylvania Supreme Court nor the AOPC has delegated to Dauphin County the authority to oversee the operations or day-to-day management of District Justice offices.

In view of the foregoing, there exists a genuine issue of material fact regarding Dauphin County's control over significant aspects of the compensation, terms, conditions, and privileges of their employment. Indeed, the ambiguity of the County–Court relationship raises factual issues that properly should be decided by a jury. Based upon the record evidence recounted above, a reasonable jury could conclude that the County enjoyed co-employer status as to these Plaintiffs. Accordingly, Defendant's motion for summary judgment on the ground that Defendant is not an "employer" of Plaintiffs must be denied.

## B. Defendant's Liability for Hostile Environment Harassment

Next Defendant contends that it cannot be held liable for a hostile environment created by Lowery because (1) it was not Lowery's employer; and (2) it took adequate measures reasonably calculated to prevent further harassment once it learned of Lowery's conduct.

Agency principles govern the imposition of vicarious liability in cases of supervisory harassment where the alleged harasser is an employee or "agent" of the defendant. *See Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 763, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). An "agent" is defined as "a person authorized by another to act for or in place of him; one intrusted with another's business." Black's Law Dictionary 63 (6th ed.1990). *See also* Restatement (Second) of Agency § 1 (1957) ("Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.... The one who is to act is the agent.").

■ Agency principles, however, are not implicated under the unique factual circumstances of this case. In this case, the undisputed facts of record establish that the alleged harasser, an agent or employee only of the Commonwealth, although a supervisor, was neither an employee or agent of Dauphin County. Thus, while principles of agency may implicate the Commonwealth, the County cannot be held liable under agency principles for the conduct of one who was never the County's agent or employee.

■ However, because there is evidence of record to support a jury finding that Dauphin County was Plaintiffs' co-employer, *see* Part III. A., *supra,* the County may bear responsibility for the workplace environment of Plaintiffs, and be required to protect its employees from illegal acts of its own employees and non-employees alike. *See* 3 Larson, Employment Dis-

crimination § 46.07[4] (2d ed.). Although the Third Circuit has yet directly addressed the question, the emerging trend among federal courts is to permit a cause of action under Title VII against employers for the sexual harassment of employees by non-employees. The First,[2] Eighth,[3] Ninth,[4] and Tenth,[5] Circuits, as well as several district courts,[6] have followed the EEOC's guidelines on this subject, which state:

> An employer may also be responsible for the acts of non-employees, with respect to sexual harassment of employees in the workplace, where the employer (or its agents or supervisory employees) knows or should have known of the conduct and fails to take immediate and appropriate corrective action.

29 C.F.R. § 1604.11(e) (1997). It has been said that "This liability is an extension of the employer's duty to maintain a working environment free from unlawful harassment, which duty may require the employer to exercise control over individuals not under its employ." Larson § 46.07[4]. The principles of co-employer liability set forth in *Graves* are consistent with employer liability for the work environment.[7] Consequently, upon a showing that Dauphin County knew or should have known of Lowery's offensive conduct and failed to take prompt, corrective action, it can be held liable for its failure to remedy the harassing conduct.

It is undisputed in this case that Plaintiffs submitted a letter outlining their allegations of sexual harassment to the Court Administrator for the Dauphin County Court of Common Pleas, whereupon the County convened a committee to investigate the allegations against Lowery. (*See* Def.'s Facts ¶¶ 7, 9; Pls.' Facts ¶¶ 7, 9.) Based on these undisputed facts alone a jury could reasonably conclude that the County had notice of Lowery's conduct.

The next question, then, is whether, based upon the evidence in the record,

---

**2.** *Rodriguez–Hernandez v. Miranda–Velez,* 132 F.3d 848 (1st Cir.1998).

**3.** *Crist v. Focus Homes, Inc.,* 122 F.3d 1107 (8th Cir.1997).

**4.** *Folkerson v. Circus Circus Enter., Inc.,* 107 F.3d 754, 756 (9th Cir.1997)("an employer may be held liable for sexual harassment on the part of a private individual, such as the casino patron, where the employer either ratifies or acquiesces in the harassment by not taking immediate and/or corrective actions when it knew or should have known of the conduct.").

**5.** *Lockard v. Pizza Hut, Inc.,* 162 F.3d 1062, 1073–74 (10th Cir.1998) ("An employer who condones or tolerates the creation of [a hostile work] environment should be held liable regardless of whether the environment was created by a co-employee or a nonemployee, since the employer ultimately controls the conditions of the work environment.").

**6.** *Sabo v. Lifequest, Inc.,* No. CIV.A.95–3757, 1996 WL 583169 (E.D.Pa. Oct.8, 1996) (noting and following trend among federal courts of permitting Title VII cause of action against employers for harassment of employees by non-employees); *Hallberg v. Eat'N Park,* No. 94–1888, 1996 WL 182212 (W.D.Pa. Feb.28,

1996) (finding that an employer may be held liable for harassment of its employee by a non-employee); *Magnuson v. Peak Technical Servs., Inc.,* 808 F.Supp. 500 (E.D.Va.1992), aff'd, 40 F.3d 1244 (4th Cir.1994) (stating the elements of a cause of action by employees against employers for the harassing acts of non-employees); *Sparks v. Regional Medical Ctr. Bd.,* 792 F.Supp. 735 (N.D.Ala.1992) (holding medical center responsible for sexual harassment of employee by independent-contractor physician, but finding no liability because of remedial measures taken); *Powell v. Las Vegas Hilton Corp.,* 841 F.Supp. 1024 (D.Nev.1992) (holding that an employer may be liable for sexual harassment of employees by non-employees).

**7.** Indeed, the Third Circuit in *Graves* observed that "Dauphin County could be liable to the Clerks even though it did not directly engage in the harassing conduct." *Graves,* 117 F.3d at 729 n. 12 (citing *Kinnally v. Bell of Pennsylvania,* 748 F.Supp. 1136 (E.D.Pa.1990) ("The inaction of executive and management personnel may serve as a basis for liability under Title VII even where these high-level employees have played no direct role in the alleged discrimination."); *Taylor v. Jones,* 653 F.2d 1193, 1199 (8th Cir.1981) (noting that "toleration of a discriminatory atmosphere alone gives rise to a cause of action")).

there is a genuine issue of material fact as to whether the County's response to the allegations fell short of the prompt and adequate remedial action required of employers in the Third Circuit who learn of harassment of their employees. *See Andrews v. City of Philadelphia*, 895 F.2d 1469, 1486 (3d Cir.1990); *Bouton*, 29 F.3d at 107. In *Knabe v. Boury Corp.*, 114 F.3d 407 (3d Cir.1997), the Third Circuit emphasized that the adequacy of the investigation mounted by an employer must be analyzed independently of the adequacy of the remedial action taken by the employer. In determining the adequacy of the employer's remedy, the Court is to consider whether the remedial action was "reasonably calculated to prevent further harassment." *Id.* at 412.

The record contains the following evidence pertinent to this issue. Regarding the investigation, the statement of facts agreed to by the parties establishes that the County convened a committee to investigate the Plaintiffs' allegations; that the committee interviewed Plaintiffs and Lowery regarding the allegations; and that the committee prepared a report based upon its investigation which it submitted to the Judicial Inquiry and Review Board. (*See* Def.'s Facts ¶¶ 9, 11, 13; Pls.' Facts ¶¶ 9, 11, 13.) With respect to adequate remedial action, the parties' statements of facts agree that on March 30, 1993, Lowery terminated the employment of Plaintiffs Graves and Reiff. At that point, the County reassigned Graves and Reiff to posts in the County Personal Property Tax Department, where they would not be subject to Lowery's conduct. The other five Plaintiffs remained in Lowery's chambers. (*See* Def.'s Facts ¶¶ 14–16; Pls.' Facts ¶¶ 14–16.) Moreover, the statement of facts further provides that during a prior episode of alleged sexual harassment in another District Justice's office, John Bottonari was named Office Manager in the office where the alleged harassment was occurring and that Bottonari was an employee of Dauphin County immediately prior to and subsequent to his tenure as office manager. (*See* Def.'s Facts ¶ 33; Pls.' Facts ¶ 33.) The deposition testimony of Leonard indicates that Leonard, the personnel director for Dauphin County, sent Bottonari to that position as office manager at the direction of County Commissioner Minnich. Leonard deposition, at 28.

■ Plaintiff's have presented no evidence and have not argued that Dauphin County's investigation was insufficient. Rather they argue that the genuine dispute that remains centers on the sufficiency of the County's remedial efforts. Graves and Reiff, whom Lowery attempted to terminate were moved to new assignments at their same pay rate, effectively ending their harassment. There was nothing more the County could or should have done under the law to remedy the harassment of Graves and Reiff. *Cf. Indest v. Freeman Decorating, Inc.*, 164 F.3d 258 (5th Cir.1999). Accordingly, Defendant's motion for summary judgment on Plaintiffs' hostile environment claims will be granted as to Plaintiffs Graves and Reiff.

■ With respect to the remaining Plaintiffs, however, a genuine issue of material fact persists concerning the reasonableness and adequacy of the County's remedial response to their reports of harassment. Plaintiffs have adduced evidence that the County's reaction to complaints of sexual harassment against another district justice included sending a County employee to manage that justice's office, with the aim of diffusing the hostile work environment. Because Plaintiffs have produced evidence that in other past reported cases of harassment the County undertook more substantial corrective action, it is for a jury to weigh Plaintiff's claim against the County's evidence that it took all actions it was legally authorized to take on Plaintiffs' behalf. Accordingly, Defendant's motion for summary judgment on Plaintiffs' hostile environment claims will be denied as to Plaintiffs Trueitt, Segarra, Debra Napper, Marshell Napper, and Clemons.

### C. Quid Pro Quo Claims

Defendant next argues that summary judgment should be granted in its favor as to Plaintiffs' claims of *quid pro quo* sexual harassment because Plaintiffs' allegations and the evidence adduced thus far fail to establish that Lowery promised Plaintiffs any benefits in return for their compliance with his demands or threatened any adverse consequences for their refusal to comply. (*See* Def.'s Br., at 13–14.)

In *Robinson v. City of Pittsburgh*, 120 F.3d 1286 (3d Cir.1997), the Third Circuit identified the elements of a *quid pro quo* sexual harassment claim. The Court agreed with the formulation set forth in 29 C.F.R. § 1604.11(a)(1) and (2) (1993), which provides two alternative theories for recovery:

> "Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment [or] (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual . . . ."

*Robinson*, 120 F.3d at 1296 (quoting 29 C.F.R. § 1604.11(a)(1) and (2)). The Court stated that "[s]ubsection (1) addresses cases in which an employee is told beforehand that his or her compensation or some other term, condition, or privilege of employment will be affected by his or her response to the unwelcome sexual advances, . . . ." *Id.* Subsection (2), however, applies to situations "in which the employee's response to sexual advances is thereafter used as a basis for a decision concerning compensation, etc." *Id.* Plaintiffs have not specified which type of *quid pro quo* harassment they claim. They have alleged, and all the record evidence indicates, that Plaintiffs' rebuffed Lowery's harassment, thus placing the instant claims outside of subsection (1).

To establish a *prima facie* case of *quid pro quo* sexual harassment,[8] each Plaintiff must satisfy a five-part test: (1) she was a member of a protected class; (2) she was subject to unwelcome sexual harassment in the form of sexual advances or requests for sexual favors; (3) the harassment complained of was based on sex; (4) her submission to the unwelcome advances was an express or implied condition for receiving job benefits or her refusal to submit resulted in tangible job detriment; and (5) respondeat superior liability exists. *See Egli v. Stevens*, No. CIV.A.93–

---

**8.** This Court notes that the United States Supreme Court, in *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) and *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), de-emphasized the distinction between the judicially-created categories of *"quid pro quo"* and *"hostile work environment"* sexual harassment by supervisors. Instead, the Court drew a distinction based upon the presence or absence of tangible employment action, which was defined as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ellerth*, 524 U.S. at 761, 118 S.Ct. 2257. The Supreme Court distinguished between those cases in which "a supervisor takes a tangible employment action against the subordinate," *id.* at 760, 118 S.Ct. 2257, and those in which "the agency relation aids in commission of supervisor harassment which does not culminate in a tangible employment action." *Id.* at 763, 118 S.Ct. 2257.

Under the *Ellerth* and *Faragher* holdings, in supervisory harassment cases in which there is tangible employment action—which in the past were referred to as *"quid pro quo"* cases—the employer is automatically liable. *Id.* at 765, 118 S.Ct. 2257. Since and before *Ellerth* and *Faragher*, courts have required a showing of tangible employment action in *quid pro quo* cases in which the plaintiff rebuffed the harasser's sexual advances. *See, e.g., Reinhold v. Commonwealth of Virginia*, 151 F.3d 172, 174–75 (4th Cir.1998); *Jones v. Clinton*, 990 F.Supp. 657, 671 (E.D.Ark.1998), *appeal dismissed*, 161 F.3d 528 (8th Cir.1998). When, however, there is no tangible employment action, the employer may raise an affirmative defense, which, if established, would enable it to avoid vicarious liability for the employee's conduct. *Id.*

157, 1993 WL 153141, at *3 (E.D.Pa. May 11, 1993), *aff'd without opinion,* 17 F.3d 1429 (3d Cir.1994); *Bonenberger v. Plymouth Township,* No. CIV.A.96–403, 1996 WL 729034, at *7 (E.D.Pa. Dec.18, 1996), *aff'd in part and rev'd in part on other grounds,* 132 F.3d 20 (3d Cir.1997).

As previously noted, Defendant's motion for summary judgment challenges the legal sufficiency of Plaintiffs' allegations and evidence to establish claims for *quid pro quo* sexual harassment. The Supreme Court has held that when, as here, the party moving for summary judgment does not have the burden of proof at trial, that party's burden at the summary judgment stage "may be discharged by 'showing'— that is, pointing out to the district court— that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. The Court finds that Defendant has made this preliminary showing with respect to Plaintiffs' *quid pro quo* claims.

The burden, therefore, falls on the nonmoving party to demonstrate the existence of a genuine dispute. Under Rule 56(e), "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Yet, Plaintiffs, in contravention of Rule 56(e), have failed to set forth any such facts by submitting either affidavits or relevant excerpts from depositions, answers to interrogatories, or admissions showing a genuine dispute for trial. Instead, Plaintiffs have rested *exclusively* on the allegations in their complaint. *See* Pls.' Br., at 14–15. Having itself searched the deposition transcripts and other documents submitted for such evidence, and construing all evidence in the light most favorable to Plaintiffs, the Court finds that no disputed issues of material fact exist with respect to the *quid pro quo* claims.

■ The principal problem with Plaintiffs *quid pro quo* claims is the utter dearth of evidence to establish a viable basis for vicarious liability. For the reasons stated in Part III. B., *supra,* respondent superior, the fifth element necessary to state a claim of *quid pro quo* sexual harassment, cannot be made out against this defendant because Lowery was not the County's employee or agent. Because of this deficiency alone, the *quid pro quo* claims of each Plaintiff must fail.

■ Even if Plaintiffs could establish respondeat superior liability against the County, their *quid pro quo* claims would fail for another reason. These claims are deficient with respect to the fourth requisite element: no Plaintiff has adduced evidence that she suffered a tangible employment action. Based on the definition set out in *Ellerth,* a tangible employment action requires some "significant change in employment status." *Id.* at 761. As to the *quid pro quo* claims of Plaintiffs Graves and Reiff, the material facts admitted by the parties establish that on March 30, 1993, Lowery terminated their employment. (*See* Def.'s Facts ¶ 14; Pls.' Facts ¶ 14.) Because, however, the County Commissioners refused to ratify their "termination" by Lowery and immediately reassigned Graves and Reiff to other County positions, the "termination" was never effectuated. Therefore, there is no record evidence to establish that either Graves or Reiff suffered a tangible employment action and their *quid pro quo* claims must fail.

Similarly, with respect to the *quid pro quo* claims of Plaintiffs Trueitt, Segarra, Debra Napper, Marshell Napper, and Clemons, there is no evidence in the record to support the conclusion that they suffered any tangible employment action. Indeed, Plaintiff Clemons alleges no employment action whatever. Among the other four Plaintiffs, the alleged tangible employment actions consisted of sham and contrived reprimands, a warning, denial of requests to leave work early, close supervi-

sion, and denial of the opportunity to handle customer service. None of these alleged injuries—with the possible exception of the last, which under circumstances not presented here, might correspond with denial of a promotion—satisfy the Supreme Court's test for tangible employment action, that of "a significant change in employment status." Because there is no evidence in the record to permit a reasonable jury to conclude that any of these alleged injuries occurred, even if they did constitute tangible employment action, which they do not, the *quid pro quo* claims of Plaintiffs Trueitt, Segarra, Debra Napper, Marshell Napper, and Clemons fail.

### D. Defendant's Subject Matter Jurisdiction Argument

Defendant contends that, because Plaintiffs' administrative complaints filed with the Pennsylvania Human Relations Commission and the Equal Employment Opportunity Commission ("EEOC") against Dauphin County contained no express averment of *quid pro quo* sexual harassment, this Court has no subject matter jurisdiction over such claims. The Supreme Court's holding in *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982) ("filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court"), forecloses Defendant's argument, which need not be addressed given this Court's preceding conclusion regarding the merits of the *quid pro quo* claims.

### E. Discriminatory Retaliation Claims

All that remains for resolution, then, are the retaliation claims. In *Nelson v. Upsala College*, 51 F.3d 383 (3d Cir.1995), the Third Circuit set forth the elements of a retaliation claim:

> To establish discriminatory retaliation under Title VII, a plaintiff must demonstrate that: (1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action

against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action.

*Id.* at 386 (citations omitted). Because there is no basis for holding this Defendant vicariously liable for any retaliation or other conduct by Lowery, see Parts III. B. and C., *supra*, the County may be liable only for its own retaliation against Plaintiffs whatsoever. There is no record evidence of any adverse employment action taken by the County against Plaintiffs. In fact, Plaintiffs do not even allege retaliation by anyone other than Lowery. Consequently, no reasonable jury could find that Plaintiffs have established the second element necessary for a *prima facie* case of discriminatory retaliation. Accordingly, the retaliation claims must fail.

### F. Punitive Damages

Finally, Defendants seek dismissal of Plaintiffs' punitive damages claims. The Court need not address this issue, as it was mooted when Plaintiffs withdrew their claim for punitive damages in their Brief in Opposition to the Defendant's Motion to Dismiss.

## IV. CONCLUSION

Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Here, there is at least a question of material fact as to whether Dauphin County could be considered a co-employer for the purposes of Title VII and whether Defendant's response to certain of the Plaintiffs' complaints was sufficient to relieve it of Title VII liability. Moreover, Plaintiffs, through depositions and other documentary evidence, have provided support for the facts alleged in their complaint; a reasonable jury could determine, as a matter of fact, that Dauphin County was a co-employer for purposes of Title VII, and further, that it failed to take adequate remedial actions to halt the harassment of Plaintiffs Trueitt, Segarra,

Debra Napper, Marshell Napper, and Clemons. Thus, genuine issues of material fact exist to move some claims in this case beyond the summary judgment hurdle.

For the reasons set forth above, Defendant's Motion for Summary Judgment will be granted with respect to the *quid pro quo* and retaliation claims of all Plaintiffs and with respect to the hostile work environment claims of Plaintiffs Graves and Reiff. The Motion will be denied with respect to the hostile work environment claims of Plaintiffs Trueitt, Segarra, Debra Napper, Marshell Napper, and Clemons.

An order will issue.

### *ORDER*

For the reasons stated in the accompanying memorandum of law, **IT IS ORDERED THAT:**

1. Defendant Dauphin County's motion for summary judgment (record document no. 39) is **GRANTED** in part and **DENIED** in part.

   a. Summary judgment is **GRANTED** in favor of Defendant County of Dauphin and against Plaintiffs Graves and Reiff as to the hostile work environment claims of Plaintiffs Graves and Reiff.

   b. Summary judgment is **DENIED** as to the hostile work environment claims of Plaintiffs Trueitt, Segarra, Debra Napper, Marshell Napper, and Clemons.

   c. Summary judgment is **GRANTED** in favor of Defendant County of Dauphin and against all Plaintiffs on their *quid pro quo* and retaliation claims.

2. The Clerk of Court shall defer entry of judgment until the conclusion of the case.

3. This matter is placed on the trial list for July 10, 2000.