

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-23-1997

# Graves v. Lowery

Precedential or Non-Precedential:

Docket 96-7277

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"Graves v. Lowery" (1997). *1997 Decisions.* Paper 138.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/138

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed June 23, 1997

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 96-7277

MARCA M. GRAVES; ANTOINETTE R. TRUEITT; LAURA
SEGARRA; DEBRA C. NAPPER; MARSHELL L. NAPPER;
SHERRY L. REIFF; DOROTHY R. CLEMONS,

Appellants,

v.

HORACE A. LOWERY, Individually and in his official
capacity as District Justice of the Magisterial District
12-1-04; THE COUNTY OF DAUPHIN; SUPREME COURT
OF THE COMMONWEALTH OF PENNSYLVANIA,
Commonwealth of Pennsylvania

APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

(D.C. Civil No. 95-cv-01624)

ARGUED DECEMBER 12, 1996

BEFORE: BECKER, MANSMANN and LEWIS,
Circuit Judges.

(Filed June 23, 1997)

James J. West (ARGUED)
105 North Front Street
Harrisburg, PA 17101

Attorney for Appellants

A. Taylor Williams
Supreme Court of Pennsylvania
Administrative Office of PA Courts
1515 Market Street, Suite 1414
Philadelphia, PA 19102

Attorney for Appellees, Horace A.
Lowery and Supreme Court of
Pennsylvania

David A. Wion (ARGUED)
Jeffrey L. Troutman
Office of County Solicitor
County of Dauphin
Post Office Box 1295
Harrisburg, PA 17108

Leonard Tintner
Boswell, Snyder, Tintner & Piccola
315 North Front Street
Post Office Box 741
Harrisburg, PA 17108-0741

Attorneys for Appellee, County of
Dauphin

**OPINION OF THE COURT**

LEWIS, <u>Circuit Judge</u>.

Seven former clerks, who worked in a state judicial
district in Dauphin County, Pennsylvania (the "Clerks"),
brought a sex discrimination suit pursuant to Title VII of
the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 <u>et seq.</u>, in
the Middle District of Pennsylvania, which named Dauphin
County, among others, as a defendant. The district court

2

dismissed the Clerks' complaint against Dauphin County pursuant to Rule 12b(6) of the Federal Rules of Civil Procedure on the ground that as a matter of law, Dauphin County could not be considered either the Clerks' "employer" or "co-employer." Graves v. Lowery, No. CV-95-1624 (M.D. Pa. April 8, 1996). The Clerks appeal from the district court's order dismissing their complaint.

On appeal, we are asked to address a narrow and unique question of employer liability under Title VII: whether the Clerks, who are formally considered employees of the judicial branch of the Commonwealth of Pennsylvania, are precluded, as a matter of Pennsylvania law, from pursuing a federal employment discrimination claim against Dauphin County, Pennsylvania. For the reasons stated below, we conclude that they are not so precluded. Accordingly, we will reverse the district court's order.

I.

The issue for resolution here arises from the continued uncertainty surrounding the structure of Pennsylvania's judicial system. In 1968, the Pennsylvania Constitution was amended to create a "Unified Judicial System." Pa. Const. art. V, § I; 42 Pa. Cons. Stat. Ann. § 301 (West 1981) (corresponding statutory provision). That system, however, has yet to be fully implemented. Most significantly, for example, county courts continue to be funded by the individual counties in which those courts sit.1 Thus, the salaries of court employees are paid by county governments rather than the state.

Because this system of funding is contrary to the idea of a "Unified Judicial System," the Pennsylvania Supreme Court struck down the system as unconstitutional. See County of Allegheny v. Commonwealth, 534 A.2d 760 (Pa. 1987).2 The court then stayed its order, directing the state

_____

1. Pennsylvania's unified court system consists of "the Supreme Court, the Superior Court, the Commonwealth Court, courts of common pleas, community courts, municipal and traffic courts in the City of Philadelphia, such other courts as may be provided by law and justices of the peace." Pa. Const. art. V, § 1.

2. In particular, the Pennsylvania Supreme Court noted that county funding of county courts was an impediment to judicial unification

3

legislature to enact a new funding system that would truly "unify" the Pennsylvania judiciary. Id. at 765. To date, the state legislature has failed to enact a constitutional funding scheme. See Jim Strader, Counties Want State to Fund Courts; Supreme Court Will Try Again to Persuade Legislature to Pay for Running County Courts, Pitt. Post Gazette, Jan. 5, 1997, at B5; Phyllis W. Beck, Foreword: A Blueprint for Judicial Reform in Pennsylvania, 62 Temp. L. Rev. 693, 697 (1988) (describing unification of the judicial system as still "at the drawing board stage"). As a consequence, the uncertain status of the Unified Judicial System continues to cause a myriad of funding-related problems. See, e.g., Jiuliante v. County of Erie, 657 A.2d 1245 (Pa. 1995) (court of common pleas sought to recoup from county attorney's fees incurred by court in defending itself against application of county's antinepotism policy to court employees); Snyder v. Snyder, 620 A.2d 1133 (Pa. 1993) (dispute between court of common pleas and county over raise for court employees).

The Clerks -- Marca M. Graves, Antoinette R. Trueitt, Laura Segarra, Debra C. Napper, Marshell L. Napper, Sherry L. Reiff, and Dorothy R. Clemons -- worked in Magisterial District 12-1-04, which is situated in and funded by Dauphin County, Pennsylvania.3 The Clerks worked under District Justice Horace A. Lowery, who was appointed in August of 1992 to fulfill the remaining term of a previous district justice.4 Approximately twenty-five clerks

_____

because the potential infiltration of county politics would erode the integrity and impartiality of the judicial system. See County of Allegheny, 534 A.2d at 765 ("[I]f court funding is permitted to continue in the hands of local political authorities it is likely to produce nothing but suspicion or perception of bias and favoritism.").

3. Pennsylvania is divided into 60 judicial districts. 42 Pa. Cons. Stat. Ann. § 901 (West 1996). Dauphin County is judicial district #12. Id. Magisterial districts are drawn within a given judicial district according to current population densities. Id. § 1502 (West 1981).

4. There is one district justice in each magisterial district. See 42 Pa. Cons. Stat. Ann. § 1511 (West 1981). District Justices have jurisdiction over such matters as landlord-tenant disputes, misdemeanor criminal offenses and civil claims for less than $8,000.00. See id. § 1515 (West 1996).

4

worked in Magisterial District 12-1-04 when District Justice Lowery came into office. Not one of the seven clerks who are parties to this appeal was hired by Lowery.

Within a short time after Lowery's arrival, the Clerks notified the office manager, Noime LeGrand, that Lowery had been sexually harassing them. The Clerks notified LeGrand pursuant to procedures set out in the sexual harassment policy contained in the Dauphin County Personnel Manual. After an investigation, LeGrand concluded that the Clerks' claims had merit and that Lowery's harassing conduct was pervasive.

On January 20, 1993, LeGrand, along with nine co-workers, including the Clerks, submitted a formal complaint to the Dauphin County Court Administrator alleging various incidents of sexual harassment by Lowery. In response, Dauphin County convened an investigative panel, which was chaired by the County's Chief Clerk. The County also made counseling services available to the Clerks.

Soon after the investigative panel was convened, Lowery fired LeGrand and an assistant bookkeeper, Elista Vennie. Lowery notified the Dauphin County Commissioners of his decision to terminate the two employees. Dauphin County, however, refused to effectuate the terminations and, instead, assigned the two employees to other magisterial districts within the County. The County continued to draw the salaries of LeGrand and Vennie from Lowery's budget. According to the County, it refused to effectuate Lowery's termination of the employees because it was concerned about its own potential liability if the employees later proved that Lowery's termination of the employees amounted to retaliatory discharge.

Lowery then took a number of other retaliatory actions, including firing two of the Clerks -- Marca Graves and Sherry Reiff. He also refused to approve vacation time and other requests for some of the other clerks.

Later, Lowery sought to fill the two positions vacated by LeGrand and Vennie. The County, however, refused to approve funding for the positions, maintaining that because LeGrand and Vennie -- the "terminated" employees -- were

5

still on the payroll and because their paychecks were coming out of Lowery's budget, he was, in effect, asking for funding for two additional positions.

In an effort to compel the County to terminate LeGrand and Vennie and provide the funding necessary to hire two new employees, Lowery filed suit against the County in the Pennsylvania Commonwealth Court. The Commonwealth Court held that "Lowery has the authority to discharge his employees without approval from the county commissioners, and the right to refill the positions thus vacated in his office." Lowery v. Sheaffer, No. 62 M.D. 1993, slip op. at 4 (Pa. Commw. May 13, 1993). In addition, the court found that the County was required by state law to provide the court with adequate funding to maintain its operation. Id. The County then removed LeGrand and Vennie from the payroll.

LeGrand and Vennie filed suit in the Middle District of Pennsylvania under Title VII and 42 U.S.C. § 1983 against Lowery and Dauphin County.5 LeGrand and Vennie alleged that the County's funding of their positions was sufficient to impose employer status on the County. Thus, according to LeGrand and Vennie, the County could be held liable under both Title VII and § 1983 theories. LeGrand v. Lowery, No. CV-93-1980, slip op. at 4 (M.D. Pa. May 3, 1994). The district court dismissed the complaint against Dauphin County pursuant to Rule 12b(6), holding that because the judiciary was defined by state law as the employer of judicial personnel, Dauphin County could not be considered the employer of LeGrand and Vennie. Id. at 8. We affirmed that decision by judgment order. LeGrand v. Lowery, 65 F.3d 162 (3d Cir. 1995) (unpublished table decision).

_____

5. The Clerks and Dauphin County assert that the lawsuit filed by LeGrand and Vennie was brought under 42 U.S.C. § 1983 only. The district court, however, stated that the suit was brought under § 1983 and Title VII. See LeGrand v. Lowery, No. CV-93-1980, slip op. at 2 (M.D. Pa. May 3, 1994). Because the district court's analysis in LeGrand clearly discussed Dauphin County's potential liability in Title VII terms, see id. at 3-9, we will assume that LeGrand and Vennie did assert a Title VII claim.

6

LeGrand's claim proceeded against Lowery and, at a subsequent jury trial, Lowery was found individually liable to LeGrand under 42 U.S.C. § 1983.6  Immediately thereafter, Lowery filed for personal bankruptcy protection.

The Clerks filed this Title VII action in the Middle District of Pennsylvania on September 26, 1995, against Lowery, the Pennsylvania Supreme Court and Dauphin County. The Clerks premised Title VII liability against the defendants on the following theory: that District Justice Lowery engaged in a pattern of quid pro quo sexual harassment, created a hostile working environment and retaliated against the Clerks for reporting his conduct; that Lowery was the supervisor of the Clerks; that Dauphin County was the co-employer of the Clerks; and that the Pennsylvania Supreme Court was the co-employer of the Clerks. The Clerks also alleged that, through custom, the Pennsylvania Supreme Court had delegated its statutorily granted governing authority over court employees to Dauphin County. In sum, the Clerks claimed that all three defendants exercised some employer-type authority over them and, accordingly, all three defendants could be held liable for Lowery's harassing conduct under Title VII.

Dauphin County filed a motion to dismiss on the ground that under the Unified Judicial System, District Justice Lowery had the sole power to hire, fire and supervise his employees. The district court agreed and dismissed the complaint against Dauphin County, finding the case indistinguishable from LeGrand, which had previously determined that the County could not be considered an employer of county court employees. See Graves v. Lowery, No. CV-95-1624, slip op. at 2 (M.D. Pa. Apr. 8, 1996) (citing LeGrand v. Lowery, No. CV-93-1980, slip op. at 8 (M.D. Pa. May 3, 1994)). The Clerks appeal from the district court's dismissal of their complaint against Dauphin County.7

_____

6. LeGrand was awarded $30,000 in damages. Vennie apparently dropped out of the case prior to the judgment.

7. The Pennsylvania Supreme Court settled with the Clerks prior to the entry of the district court's order dismissing the Clerks' complaint against Dauphin County. Dauphin County implies that, by settling, the Pennsylvania Supreme Court has accepted responsibility as the employer

7

The district court had jurisdiction under 28 U.S.C. § 1331. We have appellate jurisdiction under 28 U.S.C. § 1291.

II.

Our review of a district court's decision to dismiss a complaint for failure to state a claim is plenary. Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996). We must accept as true "the factual allegations in a complaint and all reasonable inferences that can be drawn therefrom." Holder v. City of Allentown, 987 F.2d 188, 194 (3d Cir. 1993) (quoting Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990)). Thus, a court should not grant a motion to dismiss "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

Dauphin County contends that the Clerks can assert no set of facts that would create an employer-employee relationship between the Clerks and Dauphin County. In

_____

of the Clerks. As the Clerks note, however, the Pennsylvania Supreme Court did not concede its employer status. The Clerks state that the Pennsylvania Supreme Court asserted the following in support of its motion to dismiss:

"[T]he general authority of the Supreme Court over courts of common pleas, let alone an individual magisterial district, is rarely if ever used, and the Unified Judicial System is not yet a reality. In light of [the] stay of the Allegheny County decision, the current system remains in place, and the Supreme Court exercises its supervisory powers only to do that which is reasonably necessary to insure the integrity of the system and the efficient administration of justice."

Appellants' Reply Brief at 2 (quoting Memorandum of the Supreme Court of Pennsylvania in Support of Motion to Dismiss).

For purposes of this appeal, we will assume that the Pennsylvania Supreme Court has not accepted responsibility as the employer or co-employer of the Clerks. We note, however, that under the Clerks' theory of liability, the Pennsylvania Supreme Court's status as their employer would not preclude the co-employer liability of the County.

8

Dauphin County's view, because the Clerks served at the discretion of District Justice Lowery, only he can properly be considered their employer. This employment relationship, the County claims, is defined by the Pennsylvania Constitution's requirement of a Unified Judicial System. See Pa. Const. Art. V, § 1.

The statutes which implement the Pennsylvania Constitution's requirement of a unified system define the personal staff of judicial officers as "[p]rivate secretaries, law clerks and such other personnel as an individual may be authorized by law to select and remove . . . ." 42 Pa. Cons. Stat. Ann. § 102 (West 1981). Individual counties are required to maintain a judicial account from which they must pay the salaries, fees and expenses of the court systems within that county. See id. § 3541; Allegheny County v. Commonwealth, 534 A.2d 760 (Pa. 1987).

Dauphin County maintains that even though counties across Pennsylvania are required to pay the salaries of court personnel, the personnel are "employed" by the courts. To support this contention, the County relies on a Pennsylvania Supreme Court decision, which held:

Since the court has the inherent right to hire, discharge and supervise, an employer-employee relationship exists by definition between the judges and their appointees. The fact that those employees are paid by the county does not alter the court's employer status.

County of Lehigh v. Pennsylvania Labor Relations Bd., 489 A.2d 1325, 1327 (Pa. 1985) (citations omitted).

We do not dispute the proposition that the courts are considered the employers of judicial personnel. In our view, however, this fact does not preclude the possibility that a county may share co-employer or joint employer status with the courts. While we have found no case which directly implicates this issue in the factual scenario we confront here (that is to say, which involves the narrow question of the division of responsibilities between counties and courts vis-a-vis judicial personnel), we draw some guidance from cases which have found joint employment status when two entities exercise significant control over the same

9

employees. Cf. NLRB v. Browning-Ferris Indus. of Penn. Inc., 691 F.2d 1117, 1123 (3d Cir. 1982) (recognizing concept of "joint employer" when separate entities share or co-determine conditions of employment); Rivas v. Federacion de Asociaciones Pecuarias, 929 F.2d 814, 820-21 (1st Cir. 1991) (recognizing that when an entity exercises sufficient control over employees it may be considered a "joint employer"); G. Heileman Brewing Co., Inc. v. NLRB, 879 F.2d 1526, 1531 (7th Cir. 1989) (same). We emphasize that this case is unique, and we recognize that the cases we rely upon in connection with this question are factually distinguishable. But consistent with the legal principle of joint employer status discussed in these cases, we conclude that although a court may have the "inherent right" to hire and fire employees -- even though those employees are paid by a county -- it may also have the derivative right to delegate employer-type responsibilities to a county.

Here, the Clerks allege exactly that -- i.e., that the County acted on authority delegated to it by the Pennsylvania Supreme Court. Specifically, the Clerks allege that the County was integrally involved in their employment activities. For example, the Clerks were covered by the County's personnel policies.8 Additionally, every five years, the Clerks received pins for excellent service from the County. Thus, unlike the plaintiffs in LeGrand, the Clerks do not contend that Dauphin County's funding of their positions alone is sufficient to impose co-employer status on the County. See LeGrand v. Lowery, No. CV-93-1980, slip op. at 4 (M.D. Pa. May 3, 1994) ("[T]he plaintiffs contend that County funding of the plaintiffs' positions is indeed sufficient in itself to impose employer status on the County."). Rather, the Clerks argue that the County assumed de facto responsibility over their employment.

The district court rejected the contentions of the Clerks, concluding that this case was indistinguishable from LeGrand, which, of course, arose from the same facts as those presented here.9 Because LeGrand formed the basis

---

8. These policies included holidays, vacation time, maternity leave, sick leave, etc.
9. As noted earlier, LeGrand was summarily affirmed by this Court. See LeGrand v. Lowery, 65 F.3d 162 (3d Cir. 1995) (unpublished table decision).

of the district court's decision in this case, we will discuss LeGrand in some detail.

In LeGrand, the district court concluded that county funding of the plaintiffs' positions was insufficient to impose employer status on Dauphin County. LeGrand, slip op. at 4. While conceding that a payor-payee relationship is generally indicative of an employer-employee relationship, the court found funding alone insufficient to impose employer status on Dauphin County because the County was required by state law to fund positions for the courts. In other words, the court found that the County's lack of authority over the personnel decisions of the court absolved the County of any liability as an employer. Id. at 6. The LeGrand court did acknowledge, however, that the proper inquiry under Title VII for determining employer status looks to the nature of the relationship regardless of whether that party may or may not be technically described as an "employer." Id. at 7. The inquiry, as articulated by Sibley Memorial Hospital v. Wilson, 488 F.2d 1338, 1342 (D.C. Cir. 1973), looks to the level of control an organization asserts over an individual's access to employment and the organization's power to deny such access. See also Amarnare v. Merrill Lynch, Pierce, Fenner & Smith Inc., 611 F. Supp. 344, 348 (S.D.N.Y. 1984) ("When an employer has the right to control the means and manner of an individual's performance . . . an employer-employee relationship is likely to exist."), aff'd, 770 F.2d 157 (2d Cir. 1985). The LeGrand court found that under the "control" test, the County's lack of authority to withhold funding for the employees' positions precluded the County from "controlling access" to the employees' employment opportunities. LeGrand, slip op. at 8.

Although we do not disagree with the district court's analysis in LeGrand, in our view, LeGrand is distinguishable from this case. Unlike the plaintiffs in LeGrand, the Clerks have alleged facts in their complaint, which, if proven, would allow them to show that Dauphin County, through its actions, was the de facto co-employer of the Clerks. As noted earlier, the Clerks do not contend that Dauphin County's funding of their positions is sufficient to impose employer status on the County. Rather,

11

the Clerks claim that the County, through its funding, actions and policies, exercised the requisite control over the daily employment activities of the Clerks to incur liability as a co-employer.

Further, and perhaps most important, the Clerks contend that two of them were hired by County officials to work in Magisterial District 12-1-04.10 In our view, this asserted fact alone should have precluded the district court from deciding the matter on a motion to dismiss.11

We also find it significant that the Clerks were covered by the County's sexual harassment policy. Although Lowery could have legally ignored the policy, he did not. Cf. Settelen v. County of Berks, No. 90-5992, 1991 WL 124572, at *2 (E.D. Pa. June 28, 1991) (county board of judges explicitly exempted court-appointed employees from county employee handbook). It is not disputed that the Clerks understood that they were covered by the policy. Indeed, the Clerks drafted a complaint pursuant to the policy and submitted it to a County official. Based on these actions, we find it reasonable to infer that the Clerks expected the County to have the authority to intervene in the situation. This expectation was solidified when the County convened an investigative panel and provided the Clerks with counseling services. Although employee expectations are not dispositive of employer status, they are relevant to our analysis. See Armbruster v. Quinn, 711 F.2d 1332, 1337 (6th Cir. 1983) ("[T]he most important requirement is that there be sufficient indicia of an interrelationship . . . to justify the belief on the part of an aggrieved employee that the [alleged co-employer] is jointly responsible for the acts of the immediate employer.").

---

10. Laura C. Segarra and Debra Napper allege that they were hired, respectively, by John Bottonare and Phillip Intrieri, both of whom work for Dauphin County.

11. The LeGrand court refrained from considering the implications of County input into the hiring process. See LeGrand, slip op. at 8 n.2 ("[W]e have no occasion to consider whether the County could be a Title VII employer in other circumstances when it does have input into the hiring process.").

12

In sum, the precise contours of an employment relationship can only be established by a careful factual inquiry. See Magnuson v. Peak Tech. Servs., Inc., 808 F. Supp. 500, 510 (E.D. Va. 1992) (determining whether a defendant is a "joint employer" under Title VII requires "[c]onsideration of all of the circumstances surrounding the work relationship"), aff'd, 40 F.3d 1244 (4th Cir. 1994); see also NLRB v. Browning-Ferris Indus. of Penn., Inc., 691 F.2d 1117, 1121 (3d Cir. 1982) (noting that under the NLRA, "the question of `joint employer status' is a factual one"). Here, the Clerks alleged facts in their complaint, which, if true, could allow a jury to find that Dauphin County was the co-employer of the Clerks. Specifically, the Clerks alleged that they were covered by the County's personnel policies, that they were told that they were County employees, that the County investigated their allegation of sexual harassment, that they were subject to termination and/or reinstatement by the County and that two of them were hired by the County.

By failing to take these allegations into account, and instead referring solely to the not-yet-implemented dictates of Pennsylvania law, the district court elevated form over function. The court could have, of course, looked to state law as one of many factors in making its determination. But, again, "a plaintiff's status as an employee under Title VII can be determined only upon careful analysis of the myriad facts surrounding the employment relationship in question." Miller v. Advanced Studies, 635 F. Supp. 1196 (N.D. Ill. 1986). Indeed, such an analysis is essential when, as here, the nature of the employment relationship is quite uncertain.

We decline to speculate as to whether the Clerks will ultimately succeed in their claim against Dauphin County. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) ("The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."). We merely note that the employment relationship between the Clerks and the County was sufficiently ambiguous that the Clerks' claim against the County should not have been dismissed at the pleading stage. See DeFranks v. Court of Common Pleas, 68 F.E.P.

13

Cases 1306, 1310 (W.D. Pa. 1995) (denying county's motion to dismiss Title VII complaint filed by a court reporter on the ground that the court reporter "must . . . be afforded the opportunity to establish the facts relevant to her employment"). Indeed, the County's own actions indicate that even it was unsure about its responsibilities to the Clerks. For example, the County's initial refusal to acquiesce in Lowery's retaliation attempt against Vennie and LeGrand suggests that the County thought that it may have owed a duty to those employees.12

Finally, we note that insulating the County from any liability solely out of deference to state law would undermine the important policies underlying Title VII -- that is, to eradicate employment discrimination through federal remedies and to ensure compensation for victims. See Ford Motor Co. v. EEOC, 458 U.S. 219, 230 (1982); Horn v. Duke Homes, Div. of Windsor Mobile Homes, Inc., 755 F.2d 599, 605 (7th Cir. 1985). In our view, if the Clerks can prove the allegations in their complaint and, consequently, prove that the County was their de facto co-employer, liability might very well lie with the County as well as with their employer as defined by Pennsylvania law.

For the foregoing reasons, we reverse and remand for further proceedings consistent with this opinion.

A True Copy:
Teste:

Clerk of the United States Court of Appeals
for the Third Circuit

_____

12. Dauphin County could be liable to the Clerks even though it did not directly engage in the harassing conduct. See Kinnally v. Bell of Pennsylvania, 748 F. Supp. 1136 (E.D. Pa. 1990) ("The inaction of executive and management personnel may serve as a basis for liability under Title VII even where these high-level employees have played no direct role in the alleged discrimination."); Taylor v. Jones, 653 F.2d 1193, 1199 (8th Cir. 1981) (noting that "toleration of a discriminatory atmosphere alone gives rise to a cause of action"). The Clerks allege that the County did nothing to protect them from Lowery's harassing conduct and that the County, as their co-employer, had the duty to do so.

14