**Dwayne BUTLER, Plaintiff,**

v.

**Robert SNYDER, et al., Defendants.**

**No. Civ.A. 99–294–GMS.**

United States District Court,
D. Delaware.

July 25, 2000.

Dwayne A. Butler, plaintiff pro se.

Deputy Attorney General, Stuart B. Drowos, Delaware Department of Justice, Wilmington, DE, for defendants.

## MEMORANDUM OPINION

SLEET, District Judge.

Dwayne Arnold Butler, the plaintiff in this *pro se* action brought under 42 U.S.C. § 1983, is presently incarcerated at the Delaware Correctional Center ("DCC") in Smyrna, Delaware. In May 1998, Butler was transferred from the DCC to the Greensville Correctional Center ("GRCC") in Jarratt, Virginia pursuant to the Interstate Corrections Compact, 11 Del.C. § 6571. He was later returned to Delaware. In December of 1998, while Butler was still incarcerated in Virginia, Butler's 13 year old daughter died. In his complaint, Butler contends that certain Virginia and Delaware prison officials[1] violated his rights guaranteed by the First, Eighth and Fourteenth Amendments to the Constitution by failing to allow him to attend his daughter's viewing. For this purported wrong, Butler seeks declaratory, injunctive, and monetary relief.

Presently before the court is the defendants' motion to dismiss the complaint for

---

1. The defendants named in the complaint, along with their alleged positions, are as follows: (1) Delaware officials—Thomas Carroll, warden of the Webb Correctional Center in Wilmington, Delaware, Howard Young, Director of Special Programs for the Delaware Department of Corrections ("DDOC"), Paul Howard, Bureau Chief at DDOC, Robert Sny-der, warden of the DCC, Stan Taylor, Commissioner of the DDOC, and Fran Ahooria, Interstate Compact Administrator for the DDOC; (2) Virginia officials—M.C. Millard, associate warden at the GRCC, K.V. Bonner, Unit Manager at the GRCC, and Ronald Angelone, Director of the Virginia Department of Corrections.

failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the court will grant the defendants' motion.

## I. STANDARD OF REVIEW

When deciding a motion to dismiss under Rule 12(b)(6), the court must accept as true all of the factual allegations of the complaint.[2] *See Graves v. Lowery*, 117 F.3d 723, 726 (3d Cir.1997); *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir.1996). In addition, because Butler is proceeding *pro se*, the court must interpret his allegations liberally. *See Zilich v. Lucht*, 981 F.2d 694, 694 (3d Cir.1992) (citing *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)). As a result, the court cannot grant the defendants' motion to dismiss unless it appears "beyond a doubt" that Butler can prove no set of facts that would entitle him to relief. *See Graves*, 117 F.3d at 726 (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *Nami*, 82 F.3d at 65 (citing same).

## II. BACKGROUND

On December 18, 1998, Butler's mother called the GRCC to notify Butler that his daughter had died the previous day. That same day (i.e., the 18th), Defendant K.V. Bonner notified Butler of his daughter's death. Bonner was the "unit manager" assigned to the GRCC housing unit where Butler resided. Butler immediately asked to be returned to Delaware to attend his daughter's viewing. According to the complaint, Bonner responded, without hesitation, that "Delaware will not send inmates back for funerals."

On December 19th, Butler again asked to be returned to Delaware for the viewing. That request was also denied.[3] On or about December 21st, Bonner called the Delaware Department of Corrections ("DDOC") concerning Butler's request. It is not clear whether Butler asked Bonner to initiate that call or whether Bonner did so on his own initiative. However, Butler was present in Bonner's office during the call. *See* Docket Item ("D.I." 3) (attachments to complaint). In fact, Bonner permitted Butler to speak to the "contact person" from the DDOC.[4] The DDOC apparently rejected Butler's request. It is unclear what reason, if any, the DDOC "contact person" gave for denying Butler's request.

After missing the viewing, which occurred on December 23, 1998,[5] Butler submitted prison grievance forms and wrote letters to various Virginia and Delaware officials. Defendant Howard Young, Director of Special Programs at the DDOC Bureau of Prisons, responded to Butler by letter dated January 21, 1999. After offering his condolences, Young explained that the "information pertaining to your daughter's death did not reach Delaware officials in time to make the necessary travel arrangements to return you to Delaware."

---

**2.** The defendants at one point suggest that their motion should be decided on a summary judgment standard. *See* Docket Item ("D.I.") 24, at ¶ 4. However, their motion is titled and argued as a motion to dismiss for failure to state a claim. Although Rule 12(b) permits the court to treat a motion to dismiss as one for summary judgment, Butler has not been given notice of such treatment. Therefore, the court will disregard the defendants' factual averments and supporting affidavits, and decide their motion on a Rule 12(b)(6) standard. As such, the court will test the sufficiency of Butler's allegations based on his complaint (D.I.2) and the exhibits he submitted therewith (D.I.3). *See Pension Benefit Guar. Corp.*

*v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993).

**3.** The complaint does not identify the person to whom Butler's second request was addressed, the person denying that request, or the reason given for the denial.

**4.** The complaint does not identify the "contact person" with whom Butler and Bonner spoke.

**5.** It is not clear whether the December 23rd viewing date had already been scheduled at the time of Butler's December 18th request.

D.I. 3. Young also noted that the Delaware Bureau of Prisons had developed and forwarded to the GRCC warden an "operational directive" outlining the procedures for handling future requests. He noted, however, that the "procedure/process developed in no way **guarantees** that the individual will be returned to Delaware to attend a viewing or private wake for an immediate family member." *Id.* (emphasis in original).

Butler alleges that on April 6, 1999, a memo was finally posted regarding these procedures. The memo indicates the names and phone numbers of the Delaware officials that need to be contacted to process requests for transfer to Delaware in the event of the death of an inmate's immediate family member. The memo then notes: "If a decision is made to transport the inmate and this is Delaware's decision, as [GRCC] has no control over this decision, the Delaware Department of Corrections will do the transporting."

## III. DISCUSSION

### A. EIGHTH AMENDMENT CLAIM

Butler asserts that the "failure of defendants to honor his reasonable request on December 18, 1998 to be returned to Delaware was unreasonable and amounted to punishment and mental cruelty, mental anguish, thus inflicting the [sic] unnecessary and wanton infliction of pain." Compl., Count V. He contends that such infliction of pain constitutes cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution, as made applicable to the states via the Fourteenth Amendment. The court does not agree.

■ It is well established that the Eighth Amendment protects prisoners from various types of harm. *See Farmer v. Brennan,* 511 U.S. 825, 832–34, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (noting that the Eighth Amendment not only prohibits prison officials from using excessive force; it also imposes duties to provide

humane conditions of confinement, such as ensuring that inmates receive adequate food, clothing, and medical care). To state a cognizable claim, however, a prisoner must allege facts that, if proven, would satisfy two requirements—first, the alleged deprivation of rights must be sufficiently serious; second, the prison official must have acted with a "sufficiently culpable state a mind." *See id.* at 834, 114 S.Ct. 1970. The precise nature of these two requirements will vary depending on the context of the particular claim. *See, e.g., Hudson v. McMillian,* 503 U.S. 1, 8–10, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). Assuming without deciding that a prisoner's inability to attend a relative's funeral could ever form the basis for an Eighth Amendment claim, Butler has not alleged facts that, if proven, would establish that the defendants acted with a sufficiently culpable state of mind.

■ In *Thomas v. Farley,* 31 F.3d 557 (7th Cir.1994) (Posner, C.J.), the Seventh Circuit Court of Appeals rejected a prisoner's claim that prison officials had inflicted cruel and unusual punishment by refusing to permit him to attend his mother's funeral. In doing so, the court assumed without deciding that a prisoner could state an Eighth Amendment claim "if the granting of such leave were customary and prison officials denied it on a particular occasion or to a particular prisoner *in order to cause psychological distress,* or with *deliberate indifference to his mental health." Id.* at 559 (emphasis added); *see also McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999) (assuming without deciding that "if, *in order to cause a particular inmate psychological distress,* prison officials deny the inmate leave which is otherwise available to attend a parent's funeral, such conduct may in some circumstances constitute cruel and unusual punishment" (emphasis added)).

Butler does not allege that any of the defendants denied his request to attend his daughter's viewing with the purpose or intent of inflicting psychological distress.

Although Butler's complaint does characterize the defendants' state of mind as "deliberate indifference," it is clear from his more specific allegations that he accuses the defendants of no more than negligence. *See Thomas*, 31 F.3d at 558–59 (concluding that plaintiff's allegation of "deliberate indifference" was insufficient where that characterization was inconsistent with the facts alleged in the complaint).

■ Indeed, many of the named defendants are not even alleged to have been aware of Butler's request, or to have played any role in the denial of his request. Butler's theory of liability is that, upon transferring prisoners such as Butler to Virginia prisons, Delaware officials failed to provide Virginia officials with appropriate procedures to follow in the event a prisoner requests leave to return to Delaware due to the death of an immediate family member. As noted above, Delaware has subsequently provided such procedures to officials at the GRCC. Their failure to do so earlier may have been negligent, but Butler has alleged no facts from which it could be inferred that this failure amounted to deliberate indifference to Butler's mental health.[6] Mere negligence is not a sufficiently culpable state of mind to state a claim under the Eighth Amendment. *See Farmer*, 511 U.S. at

837–38, 114 S.Ct. 1970; *Thomas*, 31 F.3d at 558.

Even assuming that Delaware officials might have been willing to accommodate Butler's request, had they been notified of the situation on December 18th, Defendant Bonner's allegedly mistaken assumption to the contrary demonstrates at most negligence on his part. As already noted, Butler alleges that Delaware officials had not provided Virginia officials with procedures to follow in these circumstances until long after his daughter's death. Moreover, in a prison grievance form submitted as an attachment to the complaint, Butler acknowledges the efforts made by Bonner on his behalf:

> It was made available for me to contact my family in Delaware by Mr. Barner [sic] the Unit Manager here at Greensville. It was also Mr. Barner who I witnessed first hand, while I was in his office, on or about the 21st day of Dec. 1998, speaking with the Delaware Department of Corrections concerning the issue of me returning for my daughter's viewing. Afterwards Mr. Barner even allowed me to speak with the contact person for the Delaware Department of Corrections.

D.I. 3. These statements make clear that Bonner's conduct did not rise to the level of deliberate indifference to Butler's mental health.

---

6. Much of Butler's complaint is based on his mistaken belief that Delaware prisoners have a statutory right to a furlough in order to attend a private viewing upon the death of an immediate family member. *See* D.I. 3 (*passim*); D.I. 22. His belief is based on the following language from 11 Del.C. § 6538(b): "In the case of death, furloughs shall only be granted to an inmate for an immediate family which would include said inmate's mother, father, son, daughter, brother, sister, husband or wife. An inmate shall only be granted a furlough to attend a private viewing or wake with the inmate's immediate family." Butler construes this provision to mean that furloughs *shall be* granted in those circumstances. Such a construction might be reasonable if § 6538(b) were read in isolation. When viewed in the context of the section of which it is a part, however, it becomes evi-

dent that subsection 6538(b) is properly understood as a *restriction* on the authority of prison officials to grant furloughs. Section 6538 merely requires the DDOC to promulgate rules pursuant to which inmates "*may be* granted temporary furlough's to visit their families or to be interviewed by prospective employers." § 6538(a) (emphasis added). Section 6538(b) then *limits* the situations in which furloughs may be granted in the case of the death of an inmate's family member, just as the remaining subsections establish other limitations or conditions upon the grant of furloughs. *See* § 6538(c)–(e). Butler has cited no authority, and the court has found none, to support the proposition that § 6538 *requires* prison officials to grant furloughs in the event of death or, for that matter, any other reason.

As Butler has alleged no facts that, if proven, would demonstrate that any defendant acted, or failed to act, with either an intent to inflict psychological harm or with deliberate indifference to Butler's mental health, he has failed to state a claim under the Eighth Amendment.

## B. FIRST AMENDMENT CLAIM

■ Butler also contends that by failing to afford him the opportunity to attend his daughter's viewing, the defendants have violated his rights under the Free Exercise Clause of the First Amendment. The court does not agree.

The court will, of course, accept Butler's assertion that attending his daughter's viewing had religious significance. But even if his inability to attend that viewing constituted a sufficiently substantial intrusion on his ability to practice his religion to be cognizable under the Free Exercise Clause, that intrusion was an unfortunate consequence of his lawful incarceration. It is true that "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987) (citations omitted). It is equally true, however, that "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations of our penal system." *Id.* (citation omitted).

One such "privilege" that a prisoner loses through lawful incarceration is the free-

dom to attend any number of events that occur outside the prison walls. The court is aware of no authority to support the proposition that prison officials run afoul of the First Amendment if they do not grant a prisoner's request for a furlough to attend a religious event. If the Constitution required prison officials to grant furloughs to attend funerals, it would presumably require them to grant furloughs for births, weddings, religious pilgrimages, and an unlimited number of other events to which a prisoner sincerely attached religious significance.[7]

The Free Exercise Clause does not impose such an extraordinary burden upon prison officials. *Cf. O'Lone,* 482 U.S. at 349, 107 S.Ct. 2400 (noting that prison regulations that impinge upon constitutional rights are valid if they are "reasonably related to legitimate penological interests" (citation omitted)). Because the First Amendment does not require prison officials to grant furloughs to attend religious events, it follows that the defendants' alleged failure to ·establish procedures for consideration of furlough requests also does not state a claim under the First Amendment.[8]

## C. OTHER CLAIMS

To the extent Butler has attempted to assert a Fourteenth Amendment claim independent of his First and Eighth Amendment claims, he has failed to identify a protected property or liberty interest implicating due process concerns.[9] *See Ver-*

---

7. The court by no means intends to suggest that the tragedy of Butler's daughter's death is of comparable significance to a birth or a wedding. But the court cannot conclude that the Constitution requires or even permits prison officials to grant or deny a request for a furlough on the basis of the officials' assessment of an event's relative religious "value."

8. It does not, of course, follow that prison officials are free to grant or deny furloughs on the basis of a particular prisoner's religious beliefs, or on the basis of other impermissible factors such as race or ethnicity. But Butler has made no such allegations.

9. In "Count IV" of the complaint, Butler appears to base his "deprivation of liberty interest" claim on rights under the First Amendment. Butler correctly notes that the First Amendment is applicable to the states by incorporation into the Fourteenth Amendment. *See Employment Division v. Smith,* 494 U.S. 872, 876–77, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990). But the court has already rejected his First Amendment claim. To the extent Butler contends that 11 Del.C. § 6538 establishes a protected property or liberty interest in a furlough, his position is premised on his mistaken interpretation of that provision as establishing a *right* to a furlough. *See* footnote 7,

*rone v. Jacobson*, No. 95 CIV. 10495(LAP), 1999 WL 163197, at *5 (S.D.N.Y.1999) (noting that "a prisoner does not have a protected right to attend the funeral of a relative"). Finally, having decided that all of Butler's federal claims must be dismissed, the court will exercise its discretion and decline to exercise supplemental jurisdiction over any state law claims that Butler may have attempted to assert in his complaint. *See* 28 U.S.C. § 1367(c)(3).

## IV. CONCLUSION

For the foregoing reasons, the court will grant the defendants' motion to dismiss the complaint in its entirety. An appropriate order shall be issued.

*supra.* Moreover, as previously discussed in the context of Butler's Eighth Amendment claim, his allegations amount to no more than negligent action or inaction on the part of the defendants. As the Supreme Court has recognized, merely negligent conduct "does not implicate the Due Process Clause of the Fourteenth Amendment." *Daniels v. Williams,* 474 U.S. 327, 334, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).