**Karen A. WALTERS, Appellant**

v.

**WASHINGTON COUNTY; Washington County Court of Common Pleas; Honorable Debbie O'Dell Seneca, individually and in her capacity as President Judge of the Washington County Court of Common Pleas; Washington County Domestic Relations Office; SEIU 668; Cathi Kresh, individually and in her capacity as Director of Washington County Domestic Relations; Jeanie Rydzak, individually and in her capacity as Clerical Supervisor, in Washington County Domestic Relations Office; Tom Jess, individually and in his capacity as Deputy Court Administrator of Washington County.**

Nos. 09–2212, 10–1758.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit
LAR 34.1(a) Feb. 18, 2011.

Filed: March 1, 2011.

Peter M. Suwak, Esq., Washington, PA,
for Appellant.

Mary E. Butler, Esq., Supreme Court of
Pennsylvania Administrative Office of PA
Courts, Philadelphia, PA, Robert J.
Grimm, Esq., Swartz Campbell, Rosemary
Marchesani, Esq., Cipriani & Werner,
Pittsburgh, PA, for Appellees.

Before: SLOVITER and HARDIMAN,
Circuit Judges and JONES,* District
Judge.

## OPINION OF THE COURT

HARDIMAN, Circuit Judge.

Karen A. Walters appeals the District
Court's summary judgment against her on
her due process and employment discrimi-
nation claims. We will affirm.

### I

Because we write primarily for the par-
ties, we recite only the essential facts and

* The Honorable C. Darnell Jones, II, District
Judge for the United States District Court for
the Eastern District of Pennsylvania, sitting
by designation.

procedural history. We exercise plenary review over the District Court's summary judgment and we apply the same standard as the District Court. *Norfolk S. Ry. Co. v. Basell USA Inc.*, 512 F.3d 86, 91 (3d Cir.2008).

Walters worked as a Clerk–II Typist in the Domestic Relations Office of the Washington County Court of Common Pleas from August 19, 1992 to October 18, 2004. During the course of her employment, Walters was disciplined by her supervisors on numerous occasions for insubordination, failure to timely complete work assignments, and failure to properly label court orders or accept child support payments. App. 430a–432a, 386a, 440a, 441a. Most recently, on October 13, 2004, co-worker Lisa Juskowich, accused Walters of lifting Juskowich's shirt during a conversation and placing her hands on Juskowich's stomach. *Id.* at 457a.

Following this most recent incident, the Washington County Human Resources Department sent a report to Judge Debbie O'Dell Seneca, the President Judge of the Court of Common Pleas, stating that Walters had violated the County's Sexual Harassment Policy. *Id.* at 468a. In an independent investigation, Christine Weller, the Court Administrator, interviewed Walters, Juskowich and two witnesses to the incident, and found that Walters had "engaged in prohibited physical conduct that was construed by [Juskowich] . . . as a sexual advance towards her." *Id.* at 462a. Judge O'Dell Seneca considered the County's and the Administrator's reports, as well as statements from Walters's supervisors regarding her previous misconduct, and decided, on December 27, 2004, to terminate Walters's employment. *Id.* at 502a. Walters was forty-one years old at the time of her termination, and she was replaced by a woman in her mid-twenties.

Walters's union representatives filed grievances with both the Court of Common Pleas and the County Human Resources Office, alleging that Walters had been fired without just cause, in violation of the County's Collective Bargaining Agreement (CBA).[1] Finding that the County was statutorily barred from entering a collective bargaining agreement that restricted the Court's power to discharge court employees, both offices refused to entertain Walters's claim. Similarly, the Pennsylvania Labor Relations Board and the Pennsylvania Human Relations Commission summarily dismissed Walters's petitions, stating that the CBA's grievance provisions could not protect Walters, a court employee, from at-will termination.

Walters sued in District Court, alleging: (1) that she was denied procedural due process when she was terminated outside the CBA's formal grievance process; (2) that she was terminated on the basis of age in violation of the Age Discrimination in Employment Act (ADEA); and (3) that her co-workers' accusations of sexual harassment gave rise to a state law claim for intentional infliction of emotional distress (IIED). Finding no "just cause" provision in the CBA that created a legitimate property interest in Walters's continued employment, the District Court entered summary judgment on Walters's due process claim. The District Court also determined that Walters had failed to present any evidence showing that her former employer's articulated reason for firing her was pretextual. Having ordered summary judgment on all her federal claims, the Court refused to exercise sup-

1. Although the CBA does not require the County to have "just cause" to fire an employee, the CBA creates a grievance process for employees to contest allegedly unlawful terminations. App. 631a, 638a.

plemental jurisdiction over Walters's IIED claim.

Walters moved for reconsideration on her due process claim. The District Court denied the motion, holding that any "just cause" provision in Walters's CBA would be unenforceable, as it would conflict with Pennsylvania's well-established principle that judicial officers retain exclusive control over the hiring and firing of court employees.

This timely appeal followed.

## II

Walters claims the District Court erred in finding that she has no property interest in her position with the Court of Common Pleas. "To have a property interest in a job, ... a person must have more than a unilateral expectation of continued employment; rather, she must have a legitimate entitlement to such continued employment." *Elmore v. Cleary*, 399 F.3d 279, 282 (3d Cir.2005) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). We look to Pennsylvania law to determine whether Walters has a protectable interest in her job. *Kelly v. Borough of Sayreville*, 107 F.3d 1073, 1077 (3d Cir.1997).

In Pennsylvania, only two types of contracts give rise to a legitimate expectation of continued employment. "The first is a contract that confers a protected status, such as a tenure contract providing for permanent employment. The second is a contract explicitly providing that it may be terminated only 'for cause.'" *Sanguigni v. Pittsburgh Bd. of Pub. Educ.*, 968 F.2d 393, 401 (3d Cir.1992). Walters claims she is protected under the latter, and that several provisions of the CBA, when read together, strongly suggest that employees may only be fired "for cause." Walters also argues that the County has historically opened its grievance procedure to court

employees, thus encouraging their reliance on the formalities of the process.

■ We need not express an opinion as to whether the CBA or the County's past practices have created an expectation among court employees of continued employment, because we agree with the District Court that, under Pennsylvania law, the County may not unilaterally restrict the ability of the Court of Common Pleas to discharge its employees at will. In the words of the Pennsylvania Commonwealth Court: "[T]he discharge of a judicial employee is a judicial power vested by [the Pennsylvania] Constitution in the courts. That power may not, consistent with the constitutional doctrine of separation of powers, be policed, encroached upon, or diminished by another branch of government." *Beckert v. Am. Fed'n of State, Cnty. & Mun. Employees*, 56 Pa.Cmwlth. 572, 425 A.2d 859, 862–63 (1981), *aff'd*, 501 Pa. 70, 459 A.2d 756 (1983). Thus, while the Public Employee Relations Act, 42 Pa. Cons.Stat. § 1101.701, authorizes the County to negotiate with public employees as to their "wages, hours, and other terms and conditions of employment," the Supreme Court of Pennsylvania has held that "matters affecting the hiring, discharge, and supervisory powers of [the judiciary] are not subject to collective bargaining." *Cnty. of Lehigh v. Pa. Labor Relations Bd.*, 507 Pa. 270, 489 A.2d 1325, 1327 (1985); *see also Miller v. Clinton Cnty.*, 544 F.3d 542, 553 (3d Cir.2008).

Walters does not contest that she is a judicial employee. Nor does she argue that requiring the President Judge to follow the grievance procedure outlined in the County's CBA will not impact the court's inherent "authority to select, discharge, and supervise court personnel." *See Commonwealth ex rel. Bradley v. Pa. Labor Relations Bd.*, 479 Pa. 440, 388 A.2d

736 (1978). Rather, Walters seems to suggest that counties that exercise considerable control over the hiring and firing of court personnel retain the authority to negotiate the terms of their dismissal. In other words, once the court cedes some of its "inherent" power to discharge employees to the County, it must relinquish all of its power to do so. The Supreme Court of Pennsylvania has long rejected this line of reasoning, openly warning counties that, although they retain the right to collectively bargain on behalf of court employees, "should collective bargaining impair the independence of the judicial function, nothing ... prohibits courts from taking reasonable, appropriate measures to maintain their independence." *Id.* at 739 (citing *Commonwealth ex rel. Carroll v. Tate,* 442 Pa. 45, 274 A.2d 193 (1971) and *Leahey v. Farrell,* 362 Pa. 52, 66 A.2d 577 (1949)).

Significantly, Walters fails to cite a single Pennsylvania case or statute which supports her position, relying instead on a decision upholding the rights of judicial employees in Pennsylvania to bring Title VII actions against county officials. *See Graves v. Lowery,* 117 F.3d 723 (3d Cir. 1997). Walters's reliance on *Graves* is inapt. In *Graves,* we applied the federal "right of control" test to decide plaintiffs' Title VII claims, which required us to consider "all of the circumstances surrounding the work relationship." *Id.* at 728. In contrast, to successfully assert a due process claim, Walters must demonstrate that the *State* recognizes a protectable interest in her continued employment. *Kelly,* 107 F.3d at 1077. Pennsylvania has repeatedly held that no protectable interest in judicial employment arises unless that interest is created by the courts. *See Bendorf v. McCormick,* 674 F.Supp. 15 (W.D.Pa.1987) (rejecting plaintiff's argument that because the court did not object to the county's collective bargaining agreement, it "tacitly agreed" to abide by the contract's "just cause" provision). In fact, *Graves* specifically recognizes that while judges in Pennsylvania may "delegate employer-type responsibilities to a county," ultimate authority to hire and fire judicial employees remains with the courts. 117 F.3d at 727.

In sum, because Walters presents no evidence that the Washington County Court of Common Pleas has created a protectable interest in her continued employment, her due process claim must fail.

### III

Walters's ADEA claim fares no better. Appellees concede that Walters established a *prima facie* claim for age discrimination. Indeed, Walters is a qualified Clerk–II Typist, she is over the age of forty, she has been terminated, and a younger worker has been hired to take her place. Once the employer proffered a legitimate nondiscriminatory reason for her termination, however, Walters had to present evidence that the stated reason for termination was a pretext for discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). She could have carried that burden either by discrediting the employer's proffered reason or by showing that discrimination was more likely than not a motivating or determinative cause of the adverse employment action. *Fuentes v. Perskie,* 32 F.3d 759, 764 (3d Cir.1994). The District Court correctly determined that Walters failed to demonstrate pretext under either prong.

First, Walters presented no evidence suggesting that age played any role in the court's decision to fire her. Prior to issuing her decision in December 2004, the President Judge considered reports from the Court Administrator and Human Resources Office, as well as statements from

Walters's direct supervisors, describing a long history of misconduct in the workplace. Nothing in the record demonstrates that the President Judge has a history of discriminating against Walters or any other court employee on the basis of age; in fact, Walters was first disciplined by the court in November 1993 when she was in her early thirties. Walters presented no evidence suggesting that age was more likely than not a "motivating or determinative cause" in her termination. *Fuentes*, 32 F.3d at 764.

■ Walters also failed to demonstrate that the President Judge's articulated reason for firing her, *i.e.*, that she violated the County's Sexual Harassment Policy by placing her hands on a co-worker's stomach, was "weak[ ], implausib[le], inconsisten[t], incoheren[t], or contradict[ory]." *Id.* at 765. Walters argues that she has consistently denied Juskowich's accusations of touching and that witnesses interviewed during the Court Administrator's investigation were not actually present during the alleged incident. The District Court held that the court's investigations into the matter were adequate, and we agree. Prior to issuing her report, the County Administrator interviewed several witnesses, including Walters, Juskowich, and at least one co-worker who was within earshot of the event. The County Human Resources Office also undertook an investigation into Juskowich's allegations and found that Walters had violated the County's Sexual Harassment Policy.[2] Even if the court had not thoroughly investigated

the October 2004 incident, Walters's prior incidents of misconduct, which she does not contest, provided ample basis for her termination.

For the reasons stated, we will affirm the judgment of the District Court.

---

2. Walters notes that Juskowich "admitted" during her deposition that Walters had never shown any interest in having sex with women, that Walters never propositioned her for sex, and that Walters's non-consensual touching was not meant as a sexual advance. App. 1188a. Walters claims, therefore, that she did not violate the County's Sexual Harassment Policy. Under *Fuentes*, however, a "plaintiff cannot simply show that the employer's decision was wrong or mistaken," but rather that the stated reason was "unworthy of credence." 32 F.3d at 764. We agree with the District Court that reading the County's Sexual Harassment Policy to prohibit unwanted touching is not a decision "unworthy of credence."