Gary BRISTOL, Plaintiff–Appellee,

v.

The BOARD OF COUNTY COMMIS-SIONERS OF THE COUNTY OF CLEAR CREEK and Don Krueger, in his official capacity as the Sheriff of the County of Clear Creek, Defendants–Appellants,

County Sheriffs of Colorado, Inc., Amicus Curiae.

No. 00–1053.

United States Court of Appeals, Tenth Circuit.

Dec. 12, 2002.

---

3. In fact, after seeing Dr. Garcia's report during the sentencing phase, the jurors still sentenced Mr. Ellis to death.

Robert M. Liechty, Denver, CO, for Defendants–Appellants.

Evan S. Lipstein of Law Offices of Evan S. Lipstein, Lakewood, CO, (John W. Berry, Denver, CO, with him on the brief), for Plaintiff–Appellee.

Josh A. Marks and Andrew D. Ringel, Hall & Evans, L.L.C., Denver, CO, filed a brief on behalf of the Amicus Curiae.

Before TACHA, Chief Judge, SEYMOUR, EBEL, KELLY, HENRY, BRISCOE, LUCERO, MURPHY, HARTZ and O'BRIEN, Circuit Judges.*

LUCERO, Circuit Judge.

We granted en banc rehearing in this case to further consider whether the Board of County Commissioners of Clear Creek County, Colorado ("Board") owes a duty to provide accommodation under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq., to Gary Bristol, an employee of the County Sheriff.

We hold that, because under Colorado law a Board lacks the power to control the hiring, termination, or supervision of a Sheriff's employees, or otherwise control the terms and conditions of their employment, there can be no basis upon which a jury could determine that the Board owes such a duty. Our prior panel opinion is vacated in part, and we reverse the district court's ruling on this issue and remand with instructions to dismiss the action as to the Board.

**I**

From February 1990 until May 1996, Gary Bristol worked as a confinement officer for the Clear Creek County Sheriff, Don Krueger. In March of 1996, Bristol was treated for a heart condition that, according to his cardiologist, would prevent him from having contact with inmates or engaging in severe or strenuous activity. Bristol was temporarily reassigned to light duty in the jail, but his cardiologist later wrote to the Sheriff to inform him that Bristol's heart condition would restrict his activities indefinitely. On May 20, 1996, the Sheriff discharged Bristol on the grounds that Bristol could no longer perform the essential functions of his job as a confinement officer and the Sheriff could not accommodate his disability on a permanent basis. Bristol appealed to the County Personnel Review Board ("PRB"). The PRB upheld his dismissal, but encouraged him to apply for available Clear Creek County positions, suggesting he might be given a hiring preference if he was qualified for a County job opening.

At the time of Bristol's PRB hearing, there were at least two job openings in offices of Clear Creek County officials:

---

* Judge Michael W. McConnell joined the court after oral argument in the instant case and did not participate in this decision.

equipment operator in the road and bridge department, and appraiser-trainee in the County Assessor's office.[1] Bristol interviewed for both jobs. Bristol's cardiologist, however, told him that he could not perform the duties of an equipment operator, and Diane Settle, the County Assessor, did not hire Bristol for the appraiser-trainee position. After working for two years in non-County positions, Bristol filed suit against the Board and the Sheriff in August 1998. Among other claims, Bristol alleged that both the Board and the Sheriff were his employers for ADA purposes and illegally discriminated against him by refusing to offer him a job that did not exceed his physical limitations. Bristol sought reinstatement, back pay, attorney's fees, other damages, and costs.

At trial, defendants moved for judgment as a matter of law, arguing that only the Sheriff was Bristol's employer. The district court ruled that *both* the Sheriff and the Board of County Commissioners were Bristol's employers as a matter of law. A jury returned a verdict for Bristol, awarding him damages and attorney's fees. Defendants appealed. Exercising appellate jurisdiction pursuant to 28 U.S.C. § 1291, a panel of this circuit held, over a dissent, that the district court should have allowed the jury to determine whether "the County [i.e., the Board] can properly be considered Bristol's employer." *Bristol v. Bd. of County Comm'rs*, 281 F.3d 1148, 1166 (10th Cir.2002). The dissent argued that, as a matter of law, the Board is not an employer of Bristol and had no duty to accommodate Bristol's disability. *Id.* at 1173 (Lucero, J., dissenting). We granted en banc rehearing on the question of the Board's status as an alleged employer of Bristol.[2]

## II

■ Because the district court denied defendants' motion for judgment as a matter of law, in which defendants argued, inter alia, that only the Sheriff was Bristol's employer,[3] this appeal turns on whether the district court properly disposed of the Rule 50 motion. "We review de novo a district court's disposition of a motion for judgment as a matter of law, applying the same standard as the district court." *Wilson v. Tulsa Junior College*, 164 F.3d 534, 536 (10th Cir.1998). "We must enter judgment as a matter of law in favor of the moving party if there is no legally sufficient evidentiary basis ... with respect to a claim or defense ... under the controlling law." *Baty v. Willamette Indus., Inc.*, 172 F.3d 1232, 1241 (10th Cir. 1999) (alterations in original) (quotation omitted). When a defendant seeks judgment as a matter of law, the controlling

1. A position later became available in the Sheriff's Office for which Bristol was not considered, but this is not relevant to the issue whether the Board had a duty to provide accommodation to Bristol.

2. It is important to point out what the instant case is not about. We are not faced with a situation where a judgment has been levied against a County official and the County must levy a tax under Colo.Rev.Stat. § 30–25–104 to pay for the judgment. Nor must we decide whether Bristol, an employee of the Sheriff, can be called a "County employee" for any purpose other than ADA accommodation. Employees of the County Sheriff are, of course, "County employees" in the same sense that employees of the federal judiciary are "federal employees." Such common usage has no bearing on our construction of the ADA. The instant case is about whether the Board can be considered an employer of Bristol so as to trigger the accommodation requirements of the ADA.

3. The Board and the Sheriff were represented by the same attorney and filed a joint motion for judgment as a matter of law. Among other claims, they argued that only the Sheriff was Bristol's employer.

question "is whether the plaintiff has arguably proven a legally sufficient claim." *Turnbull v. Topeka State Hosp.*, 255 F.3d 1238, 1241 (10th Cir.2001), *cert. denied,* 535 U.S. 970, 122 S.Ct. 1435, 152 L.Ed.2d 380 (2002). In the present case, whether the Rule 50 motion was properly disposed of depends, in turn, on the construction of the ADA and its definition of "employer."

The ADA requires a "covered entity" to provide "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee." 42 U.S.C. § 12112. An "employer" is a "covered entity" under the ADA. *Id.* § 12111. "Employer" is defined, as in Title VII, as "a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year." *Id.; see also Butler v. City of Prairie Village,* 172 F.3d 736, 744 (10th Cir.1999) (noting the similarity between the definitions of "employer" under the ADA and Title VII).

■ When courts construe statutory terms related to employment, it is often in the context of determining whether a particular entity is an "employee" or an "independent contractor." *See, e.g., Cmty. for Creative Non–Violence v. Reid,* 490 U.S. 730, 751–53, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989) (applying common-law principles to determine whether a sculptor was an employee or an independent contractor); *Oestman v. Nat'l Farmers Union Ins. Co.,* 958 F.2d 303, 305 (10th Cir.1992) (asking the same question with respect to an insurance agent). In distinguishing employees from independent contractors for purposes of social legislation, courts have historically examined both the control the alleged employer has over the alleged employee and the "economic reality" of the situation, *Bartels v. Birmingham,* 332 U.S. 126, 130, 67 S.Ct. 1547, 91 L.Ed. 1947 (1947), including the permanency of the relation and the skill required. Courts have accordingly adopted a "hybrid test" that considers both control and multiple "economic reality" factors. *Mares v. Marsh,* 777 F.2d 1066, 1067 (5th Cir.1985); *see also Spirides v. Reinhardt,* 613 F.2d 826, 831–32 (D.C.Cir.1979) (elaborating the eleven factors of the "hybrid test" in the Title VII context).[4]

We originally adopted the hybrid test in its intended context, i.e., for the purpose of distinguishing an employee from an independent contractor. *Oestman,* 958 F.2d at 305. In subsequent cases, however, we have used the hybrid test to solve a different problem: determining which of two entities was a plaintiff's "employer" under Title VII. *See, e.g., Sizova v. Nat'l Inst. of Standards & Tech.,* 282 F.3d 1320, 1328–29 (10th Cir.2002); *Lambertsen v. Utah Dep't*

---

4. Under the hybrid test, the factors used to determine whether a plaintiff is an employee or an independent contractor include the employer's right to control the "means and manner" of the worker's performance as well as: (1) the kind of occupation at issue, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the employer or the employee furnishes the equipment used and the place of work; (4) the length of time the individual has worked; (5) the method of payment, whether by time or by job; (6) the manner in which the work relationship is terminated; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the "employer"; (9) whether the worker accumulates retirement benefits; (10) whether the "employer" pays social security taxes; and (11) the intention of the parties.

*Oestman,* 958 F.2d at 305 (quoting *Spirides,* 613 F.2d at 831).

*of Corr.*, 79 F.3d 1024, 1028 n. 1 (10th Cir.1996). Our prior panel opinion applied the hybrid test in the instant case, following *Lambertsen* and its progeny. *Bristol,* 281 F.3d at 1164. We take this opportunity, sitting en banc, to clarify that the hybrid test does not provide an appropriate framework in the present situation, where there is no allegation that Bristol is an independent contractor of the Board.

 Courts have elaborated two other tests that are more applicable to the present context: the joint-employer test and the single-employer test. First, a plaintiff who is the employee of one entity may seek to hold another entity liable by claiming that the two entities are joint employers. This joint-employer test acknowledges that the two entities are separate, but looks to whether they co-determine the essential terms and conditions of employment. *See, e.g., Graves v. Lowery,* 117 F.3d 723, 727–28 (3d Cir.1997); *Virgo v. Riviera Beach Assocs., Ltd.,* 30 F.3d 1350, 1359–61 (11th Cir.1994); *Rivas v. Federacion de Asociaciones Pecuarias de Puerto Rico,* 929 F.2d 814, 819–21 (1st Cir.1991). Second, a plaintiff who is the employee of one entity may seek to hold another entity liable by arguing that the two entities effectively constitute a single employer. *See, e.g., Romano v. U–Haul Int'l,* 233 F.3d 655, 662 (1st Cir.2000); *Cook v. Arrowsmith Shelburne, Inc.,* 69 F.3d 1235, 1240 (2d Cir.1995); *EEOC v. Wooster Brush Co. Employees Relief Ass'n,* 727 F.2d 566, 571–72 (6th Cir.1984). Although these two tests are sometimes confused, they differ in that the single-employer test asks whether two nominally separate enti-

ties should in fact be treated as an integrated enterprise, while the joint-employer test assumes that the alleged employers are separate entities. *See Clinton's Ditch Coop. Co. v. NLRB,* 778 F.2d 132, 137–38 (2d Cir.1985) (explaining the difference between the two tests); *see also Rivas,* 929 F.2d at 820 n. 16 (same).

Unlike the hybrid test, both the joint-employer test and the single-employer test are designed for situations where there is more than one alleged employer.[5] In the present case, Bristol did not ask us to apply either the joint-employer test or the single-employer test, relying instead on the hybrid test we followed in *Lambertsen.* Because the hybrid test is not applicable to the facts of the instant case, however, we proceed to analyze whether the Board can be considered Bristol's employer under either the joint-employer test or the single-employer test.

### III

 Courts applying the joint-employer test treat independent entities as joint employers if the entities "share or co-determine those matters governing the essential terms and conditions of employment." *Virgo,* 30 F.3d at 1360. In other words, courts look to whether both entities "exercise significant control over the same employees." *Graves,* 117 F.3d at 727 (applying the joint-employer test to determine if state-court clerks were employees of the county as well as the judicial branch); *see also Virgo,* 30 F.3d at 1360 (looking to control to determine whether a hotel and

---

**5.** In various factual contexts, other tests have been followed by the courts, such as the agency test, the alter ego test, and the instrumentality test. *See Frank v. U.S. West, Inc.,* 3 F.3d 1357, 1362 n. 2 (10th Cir.1993). These tests are often helpful in dealing with a subsidiary and its parent corporation, when the plaintiff seeks to pierce the corporate veil and hold the parent liable under a federal statute. Because the joint-employer test and single-employer test are most applicable to the present factual context, we will limit our analysis to these two tests.

the partnership that owned it were "joint employers" under Title VII).

▮ Under the Colorado constitution, the County Sheriff is a distinct position, separate from the Board of County Commissioners. *See* Colo. Const. art. XIV, § 6 (election of County Commissioners); § 8 (election of Sheriffs and other county officers). Sheriffs have exclusive control over the hiring and firing of their employees, Colo.Rev.Stat. § 30–10–506, and even self-imposed limitations on their right to discharge employees at will are invalid, *Seeley v. Bd. of County Comm'rs,* 791 P.2d 696, 700 (Colo.1990) (en banc). Most important to control over the terms and conditions of an employment relationship is the right to terminate it under certain circumstances—a power exclusively vested in the Colorado Sheriffs with respect to their deputies. Colo.Rev.Stat. § 30–10–506; *Seeley,* 791 P.2d at 699.

Because the Board of County Commissioners has no control over the Sheriff's employees, the Board is not liable for negligent acts of the Sheriff's employees. *See Tunget v. Bd. of County Comm'rs,* 992 P.2d 650, 652 (Colo.Ct.App.2000). While the Sheriff could fire Bristol at his pleasure, the Board could not fire Bristol even for good cause. We agree with the Colorado Court of Appeals that "[t]he sheriff, not the county or the Board, has the right of control with respect to the deputies." *Id.*

Bristol relies on a group of Title VII cases from various district courts, in which a County's budgetary control over the Sheriff's office was held sufficient to make the County an "employer." *See, e.g.,*

*Spencer v. Byrd,* 899 F.Supp. 1439, 1440–41 (M.D.N.C.1995); *Johnson v. Bd. of County Comm'rs,* 859 F.Supp. 438, 440–41 (D.Colo.1994); *Manley v. Mobile County,* 441 F.Supp. 1351, 1355–56 (S.D.Ala.1977). While the Clear Creek County Board of County Commissioners does have the authority to adopt an overall budget for all County officials, including Sheriffs, this budgetary power gives the Board of County Commissioners no right to force a constitutionally independent official to hire or fire an employee. *See, e.g., Schroeder v. Bd. of County Comm'rs,* 152 Colo. 313, 381 P.2d 820, 822–23 (1963) (holding that once a Board of County Commissioners has approved the salary for an employee of a county official, it cannot use its budgetary power to force the official to fire that employee, where the official's power to hire and fire was established by state law). Evidence at trial established that the Board's budgetary authority could not be used to influence hiring and firing decisions. Bristol could have been fired only by the Sheriff, not by the Board, just as it was the Sheriff and not the Board who hired him. Budgetary power, in and of itself, does not establish the control necessary to treat the Sheriff and the Board as joint employers.

Furthermore, no evidence was introduced suggesting that the Board had any de facto authority over the Sheriff's employment decisions.[6] Bristol's failure to allege facts indicating that the Board had de facto responsibility over his employment distinguishes this case from *Graves.* In *Graves,* a group of state-court clerks brought a Title VII claim against Dauphin

6. In the present case, the Sheriff did choose to have his decision reviewed by the County PRB, but this was a voluntary choice and the PRB's decision was merely advisory. Bristol's counsel conceded at oral argument before the en banc court that the PRB had no

authority to reverse the Sheriff's termination decision, characterizing the PRB's "authority" as advisory. This conclusion is in accord with the Colorado Supreme Court's decision in *Seeley,* 791 P.2d at 700.

County, Pennsylvania, arguing that the county and the Pennsylvania judicial branch should be treated as joint employers. 117 F.3d at 723, 727. Because the clerks alleged that the county "assumed *de facto* responsibility" over their employment, the Third Circuit found sufficient evidence for the jury to determine the county's liability under the joint-employer theory. *Id.* at 727–28 ("[T]he Clerks claim that the County, through its funding, actions, and policies, exercised the requisite control over the daily employment activities of the Clerks to incur liability as a co-employer."). According to the clerks in *Graves*, they were told that "they were subject to termination and/or reinstatement by the County and that two of them were hired by the County." *Id.* at 729. By contrast, Bristol does not allege that he was ever informed that the County had the power to terminate his employment in the Sheriff's office—not surprisingly, because the County had no such power. We conclude that Bristol cannot satisfy the joint-employer test.

 Alternatively, Bristol could seek to establish the Board's liability by showing that the Board and the Sheriff effectively constituted a single employer. Courts applying the single-employer test generally weigh four factors: "(1) interrelations of operation; (2) common management; (3) centralized control of labor relations; and (4) common ownership and financial control." *Wooster Brush Co.*, 727 F.2d at 571. Courts generally consider the third factor—centralized control of labor relations—to be the most important. *See, e.g., Romano*, 233 F.3d at 666 ("[T]here is near unanimity that control of labor operations i.e., control of employment decisions, is the most important of the four factors."); *Skidmore v. Precision Printing & Packaging, Inc.*, 188 F.3d 606, 617 (5th Cir.1999) ("[C]ourts have focused almost exclusively on one question: which entity made the final decisions regarding employment matters relating to the person claiming discrimination?"). Thus, the extent to which the Board can be said to control the labor relations of the Sheriff's employees is highly determinative under the single-employer test. As discussed above, the Board had no such control over the Sheriff's employees.

Of the other factors applied by the courts under the single-employer test, the fourth—common ownership and financial control—is clearly irrelevant to a case involving governmental entities, which do not issue stock and are not owned by private parties. Moreover, no evidence has been introduced suggesting that the second factor—common management—is met here. Only the first factor, interrelations of operation, could conceivably help Bristol. Evidence at trial showed that the Board had budgetary authority over the Sheriff's office and the Sheriff used county services for administrative purposes. Nevertheless, in light of the independence of the Sheriff's office from the Board under the Colorado constitution, even the first factor does not weigh heavily in Bristol's favor. In any event, the first factor cannot counterbalance the Board's complete lack of control over labor relations in the Sheriff's office. We conclude that, in light of the evidence introduced in the present case, Bristol cannot establish that the Board and the Sheriff effectively constitute a single employer.

Bristol argues that *Owens v. Rush*, 636 F.2d 283 (10th Cir.1980), imposes liability on the Board in the present case. *Owens* did conclude that a Kansas Sheriff was an agent of the County, but for the sole purpose of satisfying the fifteen-employee jurisdictional requirement of Title VII. 636 F.2d at 286–87. No such jurisdictional question is at issue in the present case,

because the Sheriff of Clear Creek had more than fifteen employees. Because we are presently faced with a case where the jurisdictional requirement is indisputably met, *Owens* is not implicated.

Bristol also cites several cases from other circuits in support of his contention that the Board is his employer. Four of these cases involve § 1983 actions in which the acts of the Sheriff were held to set the "official policy" of the County, thus making the County liable under § 1983 for the Sheriff's unconstitutional actions and those of the Sheriff's employees. *See Lucas v. O'Loughlin*, 831 F.2d 232, 233 (11th Cir. 1987) (termination in violation of First Amendment); *Weber v. Dell*, 804 F.2d 796, 802 (2d Cir.1986) (strip search); *Blackburn v. Snow*, 771 F.2d 556, 571 (1st Cir. 1985) (same); *Marchese v. Lucas*, 758 F.2d 181, 188–89 (6th Cir.1985) (assault by deputies). These cases do suggest that counties can be held liable for the misdeeds of Sheriffs and their employees when the Sheriff is held to set "official policy" for the county.

In the present case, however, the Sheriff was not setting "official policy" in firing Bristol, except to the extent that requiring employees to be able to perform their jobs can be called a "policy." Bristol lost his job because he could no longer perform it. This situation is different than those presented in the § 1983 cases cited by Bristol, which generally involve a pattern of misconduct approved by the Sheriff. Accordingly, the § 1983 cases cited by Bristol are not analogous to the present case, and we do not consider them persuasive.

### IV

In sum, the Board had no duty as an "employer" under the ADA to provide reasonable accommodation to Bristol. As a general rule, "determining whether an entity qualifies as an employer is a fact issue

for the jury." *Bristol*, 281 F.3d at 1165. Juries are normally entrusted to apply the appropriate legal standard to the facts of each case. In the instant case, however, our conclusion that neither the joint-employer test nor the single-employer test can be satisfied requires judgment as a matter of law:

> If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

Fed.R.Civ.P. 50. Given the absence of an employment relationship between Bristol and the Board, there is no "legally sufficient evidentiary basis for a reasonable jury to find" that the Board was Bristol's employer. Defendants' motion for judgment as a matter of law should have been granted on this point, and our prior panel opinion should have remanded with instructions to dismiss the Board from this case. In all other respects, our prior opinion stands.

### V

Our prior panel opinion is **VACATED IN PART,** the judgment of the district court is **REVERSED,** and the case is **REMANDED** with instructions to dismiss this action as to the Board.