This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-39201**

**THERESE M. TRUJILLO,**

Plaintiff-Appellant,

and

**VIVA INNOVATIVE SOLUTIONS, LLC,**

Plaintiff,

v.

**LOS ALAMOS NATIONAL SECURITY,
LLC,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF LOS ALAMOS COUNTY
Jason Lidyard, District Court Judge**

Atler Law Firm, P.C.
Jazmine J. Johnston
Timothy J. Atler
Albuquerque, NM

for Appellant

Hinkle Shanor LLP
Jaclyn M. McLean
Ellen S. Casey
Santa Fe, NM

for Appellee

**MEMORANDUM OPINION**

**YOHALEM, Judge.**

**{1}** This case was brought by Plaintiff Therese M. Trujillo against Defendant Los Alamos National Security, LLC (LANS) alleging discrimination on the basis of sex and national origin, sexual harassment, and retaliation in violation of the New Mexico Human Rights Act (Human Rights Act), NMSA 1978, Sections 28-1-1 to -15 (1969, as amended through 2023), and breach of the implied contract of employment and covenant of good faith and fair dealing created by LANS' personnel policies. All of Plaintiff's claims arose out of her work for LANS pursuant to a contract between Navarro Research & Engineering, Inc. (Navarro), Plaintiff's primary employer, and LANS, then the operating and management company for Los Alamos National Laboratory (LANL). Navarro agreed to provide qualified consultants in engineering for work on LANS' projects at LANL. Plaintiff appeals the district court's order granting LANS' motion for summary judgment and dismissing her complaint based on the district court's conclusion that Plaintiff failed to raise a genuine issue of material fact for trial on what the court found was an essential element of all of her causes of action: that LANS was her employer. We agree with the district court that an employment relationship was an essential element of all of Plaintiff's claims, as preserved in the district court. We agree as well that there is no genuine dispute of material fact requiring trial on the merits on Plaintiff's claim that LANS was her employer or joint employer. We therefore affirm.

## BACKGROUND

**{2}** Navarro is a national firm providing engineering services at sites nationwide, primarily to federal government programs. Navarro had a long-term master contract with LANS to provide engineers as consultants to LANS and, as relevant here, a specific contract known as "Task Order Work Release" or "TOWR 307," to provide consultant engineers for a conduct of operations project at LANL. In 2014, Plaintiff, who has a master's degree in nuclear engineering, entered into an employment relationship with Navarro.[1]

**{3}** LANS, by contract with Navarro, would select skilled engineering consultants who, like Plaintiff, were employed by Navarro, for work on a specific project at LANS. Plaintiff and LANS agreed on her assignment to the work under TOWR 307. Plaintiff testified in her deposition that each assignment ended with a "deliverable." Plaintiff had no expectation of continuous work assignments. Each assignment would end when the task assigned was completed. Plaintiff's time off between projects ranged from a few weeks to three months.

**{4}** Plaintiff's worksite was at LANL. She was required to work on-site at LANL unless off-site work was approved. LANS paid Navarro by the hour for Plaintiff's work and Navarro in turn paid Plaintiff. Plaintiff set her own work hours and completed

---

[1]Plaintiff formed a limited liability company, Viva Innovative Solutions, LLC (Viva), to contract with Navarro. Viva was initially a plaintiff, but was dismissed by stipulation. Both parties treat Plaintiff as an employee of Navarro. We, therefore, refer simply to Plaintiff as an individual and her relationship with Navarro as an employment relationship.

timesheets showing her hours worked. These required a signature from a LANS manager approving them before being submitted to Navarro for payment.

**{5}** The division leader for operations support, Jim Angelo, a LANS employee, had oversight of the conduct of operations program at LANL. One of Angelo's subordinate employees, Art Carroll, was responsible for coordinating the activities of the contractors working on TOWR 307.

**{6}** LANS claimed that in June 2017 Angelo and Carroll decided that Plaintiff was no longer needed on the TOWR 307 project. On July 20, 2017, LANS wrote to Navarro informing Navarro that Plaintiff was no longer needed on TOWR 307. Plaintiff and Navarro were both notified that Plaintiff's last day on TOWR 307 would be August 4, 2017. LANS, however, stopped authorizing payment to Plaintiff on August 1, 2017, allegedly because she chose to work from home without LANS' permission.

**{7}** LANS, at all relevant times, had a written procedure in place titled, "Respectful Workplace and Prohibition against Harassment," prohibiting harassment and discrimination on the basis of gender, national origin, race or color, among other characteristics. This policy states that it applies to "all Laboratory workers." The policy further states that "[t]he Laboratory will take appropriate corrective action when a nonemployee worker, such as a vendor, contract worker, or consultant, is the victim of harassment or is accused of harassment." A handbook for workers about harassment includes a section stating that "[t]he same rules and protections that govern Laboratory employees apply to subcontractors who work here."

**{8}** On January 24, 2018, Plaintiff filed a charge of discrimination and retaliation with the New Mexico Human Rights Bureau (NMHRB), and on July 18, 2018, she filed a complaint in district court. Plaintiff alleged in her complaint, in relevant part, that (1) LANS violated the Human Rights Act by discriminating against her on the basis of her gender and ethnicity; (2) LANS breached its implied employment contract with her when it failed to follow its policies and procedures prohibiting both discrimination on the basis of gender or ethnicity, and retaliation for claiming discrimination; and (3) that LANS violated the implied covenant of good faith and fair dealing associated with her contract of employment. Plaintiff alleged a hostile work environment spanning the period from 2014 through 2017, as well as sexual harassment, and discrimination.

**{9}** LANS moved for summary judgment, arguing, in relevant part, that the existence of an employment relationship between LANS and Plaintiff is an essential element of all of Plaintiff's claims and that undisputed evidence establishes that LANS was neither an employer nor a joint employer of Plaintiff. LANS contended that Plaintiff was employed exclusively by Navarro. Plaintiff responded with evidence she claimed raised a genuine issue of fact for trial on LANS' status as her joint employer.

**{10}** The district court granted LANS' motion for summary judgment, agreeing with LANS that there was no genuine issue of material fact raised by Plaintiff's response. The district court concluded that, under the applicable standard of law, Plaintiff was

employed only by Navarro, and that in relation to LANS, she was a contract worker. The district court concluded that the absence of an employment relationship between Plaintiff and LANS required dismissal of Plaintiff's complaint. Plaintiff appealed.

**DISCUSSION**

**{11}** "An appeal from the grant of a motion for summary judgment presents a question of law and is reviewed de novo." *Montgomery v. Lomos Altos, Inc.,* 2007-NMSC-002, ¶ 16, 141 N.M. 21, 150 P.3d 971. "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Buke, LLC v. Cross Country Auto Sales, LLC*, 2014-NMCA-078, ¶ 20, 331 P.3d 942 (internal quotation marks and citation omitted).

**{12}** In reviewing an appeal from a district court order granting summary judgment claiming that the district court erred in concluding that there was no genuine dispute of material fact for trial, we first review the law applicable to the claims at issue. A fact is material when that fact is essential under the relevant law to establish a party's claim or defense. *See Romero v. Philip Morris Inc.*, 2010-NMSC-035, ¶ 11, 148 N.M. 713, 242 P.3d 280 ("The inquiry's focus should be on whether, under substantive law, the fact is necessary to give rise to a claim." (internal quotation marks and citation omitted)).

**{13}** The party seeking summary judgment, here LANS, has the initial burden of introducing evidence into the summary judgment record to make prima facie showing negating an essential element of the plaintiff's case. *See id.* ¶ 10. A prima facie showing requires evidence "sufficient in law to raise a presumption of fact or establish the fact in question unless rebutted." *Id.* (internal quotation marks and citation omitted). If the moving party successfully makes a prima facie showing, the resisting party (Plaintiff) must "demonstrate the existence of specific evidentiary facts," which, if proved, rebut the moving party's (LANS') prima facie case. *See id.* (internal quotation marks and citation omitted). The resisting party "may not simply argue that such evidentiary facts might exist, nor may it rest upon the allegations of the complaint," but instead must "adduce evidence to justify a trial on the issues." *Id.* (alteration, internal quotation marks, and citations omitted). In determining whether there is a genuine issue for trial, we give the nonmoving party the benefit of all reasonable doubts, drawing all inferences from the evidence in favor of a trial on the merits. *See id.* Nonetheless, a trial is required only if the evidence "would allow a hypothetical fair-minded fact[-]finder to return a verdict favorable to the non[]movant on that particular issue of fact." *Associated Home & RV Sales, Inc. v. Bank of Belen*, 2013-NMCA-018, ¶ 23, 294 P.3d 1276 (internal quotation marks and citation omitted). "Only when the inferences are reasonable is summary judgment inappropriate." *Romero*, 2010-NMSC-035, ¶ 10.

**I.     There Is No Genuine Dispute of Material Fact As to Whether LANS Is Plaintiff's Employer or Joint Employer**

**{14}** Summary judgment was granted by the district court based on the court's conclusion that the evidence in the summary judgment record conclusively established

that LANS was neither Plaintiff's employer nor her joint employer (together with Navarro). There is no dispute on appeal that a claim under the Human Rights Act can be brought only against an employer or joint employer. Under the Human Rights Act, "it is an unlawful discriminatory practice *for . . . an employer*, unless based on a bona fide occupational qualification[,] . . . to discriminate in matters of compensation, terms, conditions or privileges of employment against any person otherwise qualified because of race, age, religion, color, national origin, ancestry, sex, sexual orientation, gender, gender identity." Section 28-1-7(A) (emphasis added). Plaintiff's claim on appeal that an employment relationship is not a required element of her breach of implied contract and breach of the covenant of good faith and fair dealing claims is discussed separately below.

**{15}** Both parties rely on the federal law defining the term "employer" under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(b), and under federal statutes prohibiting discrimination in employment based on characteristics such as age or disability. *See* 29 U.S.C. § 623(a) (age discrimination), 42 U.S.C. § 12101 (disability discrimination). The Court of Appeals for the Tenth Circuit has joined a number of other federal courts in addressing what is described as a "joint employer" test. Both LANS and Plaintiff apply this test, with conflicting results, to determine whether there is an employment relationship between LANS and Plaintiff. Since no challenge to the application of the federal joint employer analysis to the Human Rights Act or to New Mexico's contract law is raised on appeal, we apply that analysis without deciding whether a different analysis might be appropriate under New Mexico law. *See Adams v. C3 Pipeline Constr., Inc.*, 30 F.4th 943, 965-66 (10th Cir. 2021) (applying a slightly different common law agency analysis under New Mexico law, weighing all factors equally, to determine whether an individual is an independent contractor or an employee under our Human Rights Act).

**{16}** The joint employer test applies when a plaintiff, who is an employee of one entity (here Navarro), claims that another entity (here LANS) is also acting as their employer and should be held liable for discrimination against them. *See, e.g.*, *Adams*, 30 F.4th at 961; *Knitter v. Corvias Military Living, LLC*, 758 F.3d 1214, 1226 (10th Cir. 2014) Under the federal joint employer test, two independent entities are considered joint employers if they "share or co[]determine those matters governing the essential terms and conditions of employment." *Bristol v. Bd. of Cnty. Comm'rs of Cnty. of Clear Creek*, 312 F.3d 1213, 1218 (10th Cir. 2002) (internal quotation marks and citation omitted). Federal "courts look to whether both entities exercise significant control over the same employees" to determine if both may be held liable as employers. *Id.* "An independent entity with sufficient control over the terms and conditions of the employment of a worker formally employed by another is a joint employer within the scope of Title VII." *Sizova v. Nat. Inst. of Standards & Tech.*, 282 F.3d 1320, 1330 (10th Cir. 2002) (internal quotation marks and citation omitted).

**{17}** The parties agree that the most important factor in the federal joint employer test is the right to terminate the plaintiff's employment. *See Knitter*, 758 F.3d at 1226; *Bristol*, 312 F.3d at 1219. Other factors considered by the district court and addressed by the

parties in this appeal include the ability to "promulgate work rules and assignments"; the ability to set "conditions of employment, including compensation, benefits, and hours [worked]"; the exercise of day-to-day supervision over the plaintiff's work; and, to a lesser extent, the plaintiff's understanding of their own status. *See Knitter*, 758 F.3d at 1226 (listing additional factors that courts consider); *see also Graves v. Lowrey*, 117 F.3d 723, 728-29 (3rd Cir. 1997) (reviewing factors considered).

**{18}**   We now turn to the evidence presented by the parties as to these factors, looking first to whether LANS presented evidence sufficient to establish a prima facie case negating each factor, and, if so, turning to the rebuttal evidence presented by Plaintiff to determine whether that evidence would support a reasonable jury finding that LANS was a joint employer. *Associated Home & RV Sales, Inc.*, 2013-NMCA-018, ¶ 23. After reviewing the evidence as to each factor, we evaluate the factors as a whole.

## A.     The Right to Terminate Plaintiff's Employment

**{19}**   LANS relied in its motion for summary judgment on the terms of its written contract with Navarro, in which Navarro agreed to provide qualified engineers for specific tasks at LANL, to establish a prima facie case that Plaintiff was not an employee of LANS. As relevant to Plaintiff's work, an engineering consultant provided by Navarro would be assigned to a task leading to a deliverable product for LANS. LANS' main contract with Navarro explicitly stated that the contract did not create either a contractual or employment relationship with Navarro personnel. LANS reserved the right to terminate the *assignment* of any Navarro personnel "with or without cause." Plaintiff was assigned to conduct of operations work at LANL, pursuant to TOWR 307. The LANS division leader for the operations division, James Angelo, where Plaintiff worked, denied by affidavit that either he or his subordinates had the authority to hire or fire Plaintiff, explaining that Plaintiff was "a task hire" and that when the task assigned to her ended, her work under TOWR 307 was done.

**{20}**   Plaintiff did not dispute the above-described terms of Navarro's contract with LANS or deny that this contract governed her work. Instead, she claimed that, as a practical matter, LANS terminated her employment despite the contract terms. To support her claim that LANS is her joint employer, Plaintiff directs us to: (1) an email from LANS to Navarro informing Navarro that Plaintiff was no longer needed on TOWR 307 after August 4, 2017; (2) an email from a LANS' employee in charge of expenditures for contract work stating that LANS would not approve payment to Navarro for Plaintiff's work from August 1 to August 4 because Plaintiff had worked from home without management approval on those days; and (3) a follow-up email moving up Plaintiff's termination date on her TOWR 307 assignment to August 1, 2017. Plaintiff also relies on a dispute as to whether she was still receiving or was still approved and considered for other work assignments by LANS after her TOWR 307 assignment ended.

**{21}**   Plaintiff argues that this evidence shows that (1) her termination from her assignment on TOWR 307 effectively terminated her employment in general, and (2)

that Angelo and Carroll acted with discriminatory motives and in retaliation for her complaints about discrimination in ending her assignment at TOWR 307, rather than ending it because she was no longer needed.

**{22}** As to Plaintiff's first argument, the federal joint employer test draws a distinction between the customer's (here LANS') right to terminate the *assignment* of an individual and an employer's right to terminate that individual's employment. *See Knitter*, 758 F.3d at 1228-29. The customer, under the joint employer test, has a right to inform a contractor that it no longer wants a particular employee of the contractor assigned to its work. *See id.* Informing the contractor that the worker is no longer needed or wanted is not viewed under the relevant law as equivalent to a right to terminate the contract worker's employment in general.

**{23}** Plaintiff also points to disputed facts about whether Plaintiff had other ongoing assignments with LANS or was permitted to apply for other assignments at LANS after her work on TOWR 307 ended, as establishing her termination by LANS from her employment in general. Federal joint employment law is clear, however, that even when a customer refuses to have a worker assigned to their work and, as a practical matter, that refusal forces the contractor to terminate that worker's employment, the customer's exercise of its right to terminate an assignment is not viewed as the legal equivalent of termination of employment. *See id.* at 1228-29; *see also Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 995 (6th Cir. 1997) (distinguishing the right to require the removal of a contractor's employee from their assignment from the decision to fire the plaintiff or make other final decisions regarding their employment).

**{24}** *Knitter* provides an example very similar to the situation here. The plaintiff in *Knitter* was employed by a cleaning service, which provided cleaners under a contract with a property management firm. 758 F.3d at 1219. The property management firm informed the cleaning service that it no longer wanted the plaintiff to be sent by the cleaning service to clean any of its properties. *Id.* at 1223. Even though the property management firm was the sole customer of the cleaning service and the customer's rejection of plaintiff for work on its premises meant that, as a practical matter, the cleaning service would be forced to terminate her employment, the Court of Appeals for the Tenth Circuit refused to view the customer's request to end the worker's assignment as a termination of employment. *Id.* at 1228-29. The sole employer with the right to terminate the plaintiff's employment remained the cleaning service. *Id.* at 1229.

**{25}** As her second argument, Plaintiff disputes that Angelo and Carroll ended her assignment because her work was no longer necessary to complete the TOWR 307 project and claims that her assignment was ended, and other work at LANS denied, in retaliation for her complaints of sexual harassment and discrimination. Although she points to the change in the date of her termination from August 4 to August 1, 2020, and the reason given, to argue that no longer needing her work was a pretext for retaliation, this dispute of fact relates solely to the merits of her claim of discrimination, and not to the preliminary question of her status as a joint employee of LANS. Indeed, although the evidence shows that LANS moved up the date for the end of her assignment from

August 4 to August 1, 2017, Navarro, as her employer, continued to compensate her for her work until August 4, 2017, underscoring her status as a Navarro, and not a LANS, employee.

## B.    Day-to-Day Supervision of Plaintiff's Work

{26}    We next look to whether LANS provided the kind of day-to-day supervision of Plaintiff's work generally provided by an employer. *See Knitter*, 758 F.3d at 1230. As in other contexts where a distinction is made between a contract worker and an employee, supervision over the details of the work—control of the means and manner of the work—is required to find a joint employment relationship. *See Butterbaugh v. Chertoff*, 479 F. Supp. 2d 485, 495-96 (W.D. Pa. 2007) (finding that evidence that the customer directly supervised how work was to be done, prepared the worker's performance evaluations, controlled the worker's hours of employment, gave specific instructions on how to perform the job, and supervised all aspects of work raised a genuine issue of fact for trial on joint employment); *Sizova*, 282 F.3d at 1330 (focusing on the degree of control over the terms and conditions of employment to find a joint employment relationship).

{27}    LANS motion for summary judgment relies on an affidavit of Angelo, TOWR 307's LANS-employed manager, stating that his subordinate Carroll "was responsible for coordinating the activities of the subcontractors . . . to make sure that the work was properly assigned and completed." Merely coordinating the activities of a group of consultants, as this evidence states, is not the kind of day-to-day supervision that would satisfy the test for joint employment. A customer is permitted to provide direction and coordination and to inspect and approve the product produced while remaining the customer, and not assuming the role of a joint employer. *See Knitter*, 758 F.3d at 1230.

{28}    Plaintiff responded with her statement in her deposition that she "reported directly to . . . Carroll." She described her daily work for LANS as focused on her assignment to produce a defined product for use by LANS. She concedes that LANS did not control her hours of work—she set her own hours and vacation times. She does not present any evidence that LANS ever disciplined her during her time working there, relying solely on LANS' refusal to pay Navarro for her time from August 1 through August 4, 2020. Plaintiff relies primarily on her affidavit stating that Carroll "review[ed] and approve[d] my work product" and "had significant input regarding . . . my job taking, . . . and . . . my daily work activities." This very general assertion does not provide a factual basis for a reasonable jury to conclude that Carroll directed and controlled the means and manner of Plaintiff's day-to-day work. Her statement does not rebut LANS' claim that Carroll simply coordinated the activities of the subcontractors and made sure the work was properly assigned and reviewed the product. *See Guest v. Berardinelli*, 2008-NMCA-144, ¶ 35, 145 N.M. 186, 195 P.3d 353 (holding that a plaintiff must provide evidence and explain why that evidence makes summary judgment improper, not simply argue that inferences from a conclusory statement requires trial on the merits).

**{29}**     Plaintiff points as well to a single instance of Carroll expressing concern about the working relationship among the subcontractors and to a single example of feedback from Angelo on the quality of her work. These are not equivalent to the day-to-day supervision of the work performed, along with setting the work schedule, and conducting formal performance evaluations found in the case law to be required to satisfy this prong of the joint employer test. *See Butterbaugh*, 479 F. Supp. 2d at 495; *see also Knitter*, 758 F.3d at 1230 (providing instruction on how to perform certain tasks and notifying the workers if their work failed to meet the customer's standards is not enough where the supervision did not extend to formal performance evaluations and formal training in how to perform all aspects of the job).

**{30}**     Finally, Plaintiff's reliance on LANS' requirement that she remain up-to-date on certain training (not described in the summary judgment record), does not create a reasonable inference that LANS controlled Plaintiff's work. Plaintiff was independently qualified as a nuclear engineer with substantial experience in the field. The requirement to remain up-to-date on some unspecified type of training is not comparable to the training relied on in *Hurde v. Jobs Plus-Med*, 299 F. Supp. 2d 1196, 1209 (D. Kan. 2004)), to find an employment relationship. *Hurde* relied on evidence that the customer trained unskilled contract workers in exactly how it wanted every task performed, and then supervised the details of their work, to find an employment relationship. *See id.*

**{31}**     We, therefore, agree with the district court that Plaintiff has failed to introduce evidence from which a jury could reasonably infer that LANS' supervision over her work was anything more than the type of limited supervision consistent with a "contractor/subcontractor relationship, not an employer/employee relationship," as the district court concluded.

## C.     The Ability to Set Conditions of Employment, Including Compensation and Benefits

**{32}**     We next look to whether there is a genuine dispute of fact as to whether LANS shared control with Navarro over Plaintiff's compensation, including the payment of benefits, social security, and other employment taxes. *See Knitter*, 758 F.3d at 1229 (looking at whether the defendant had control over the plaintiff's personnel records and payments); *see Adams*, 30 F.4th at 963 (looking at whether the defendant had control over payroll, tax documents, or benefits of the plaintiff).

**{33}**     The contract between LANS and Navarro requires Navarro to prepare and process invoices for payment to Navarro by LANS. The contract requires Navarro to have processes in place for tracking work dates, pay cycles and attendance schedules, sick and vacation accrual, straight time and overtime, as well as for issuing timely paychecks to its employees. Navarro is also required to pay all employment taxes for its employees.

**{34}**     In response to this evidence concerning the contract terms, Plaintiff directs us to the following evidence in the record, which she claims raises a genuine issue of fact for

trial regarding LANS' shared control over Plaintiff's compensation. Plaintiff points to (1) her affidavit and deposition testimony stating that Carroll signed her timesheets, and approved her vacation and leave schedule (Plaintiff admitted that LANS did not pay her for either vacation or leave); (2) her deposition testimony that Carroll asked Plaintiff to work one less day a week because management was complaining that they were paying Plaintiff too much; (3) an email sent by Carroll asking Plaintiff to return to full-time work; and (4) an instance where LANS supported Plaintiff's request for a promotion to a higher labor category under LANS' contract with Navarro, based on her résumé and the level of work she was performing.

{35}　　Assuming that these facts are true and drawing all reasonable inferences in favor of Plaintiff, this evidence would not allow a reasonable jury to conclude that LANS was Plaintiff's joint employer under the relevant principles of law. Where the contract worker is an expert consultant whose work is billed by Navarro by the hour, having the customer sign off on her time sheets, confirming Plaintiff's compensable hours so that Navarro can properly invoice LANS, is entirely consistent with contract work. LANS' contract managers voicing concern about how much money Plaintiff is being paid is also consistent with a customer's oversight of contract costs. Finally, Plaintiff fails to point to any evidence in the record showing the exercise of any direct control by LANS over her compensation. The isolated example Plaintiff gives of LANS approving her request to be placed in a higher contract category based on her qualifications and experience is consistent with LANS' role as the customer of Navarro, paying Navarro for providing engineering consultants at various levels of qualification. None of these examples reasonably suggests that LANS had assumed the role of an employer who is directly involved in compensating Plaintiff—in calculating her paycheck, in offering and paying employment benefits, in calculating and paying employment taxes, or in maintaining personnel records for her. *See Knitter*, 758 F.3d at 1229 (finding that the defendant did not control the plaintiff's payment because the defendant did not send the plaintiff her paychecks or maintain "her personnel records, including her W-2 forms"); *see Adams*, 30 F.4th at 963 (finding that where the defendant did not control the plaintiff's "payroll, tax documents, or benefits," the defendant was not plaintiff's joint employer).

## D.　　Plaintiff's Perception of Her Status

{36}　　Plaintiff has not introduced evidence into the summary judgment record, which rebuts LANS' reliance on Plaintiff's own deposition testimony, admitting that she understands she is a subcontractor at LANS. A contract worker's understanding that they are an employee is relevant only where that understanding is reasonably based on the contractor's assumption of most or all of the roles generally played by an employer. *See Graves*, 117 F.3d at 729 (holding that contract workers' belief that they are employees, is relevant only where that belief is justified by "sufficient indicia of an interrelationship" based on the other factors indicating an employment relationship (internal quotation marks and citation omitted)). An assumption that is without foundation in evidence of daily control, is given little or no weight in applying the joint employment test. *See id.* at 728-29.

**{37}** Because we conclude that Plaintiff has failed to raise a material issue of fact as to any of the tests of joint employer status, no weighing of the factors is required to affirm the decision of the district court granting summary judgment to LANS and dismissing Plaintiff's Human Rights Act claim, claims for breach of an implied contract of employment, and covenant of good faith and fair dealing associated with that employment contract.

## II. Plaintiff Failed to Preserve for Review Her Claim to an Implied Contract Between LANS and Contract Workers

**{38}** Plaintiff argues on appeal that the district court failed to address her claim that LANS' policies and procedures, by their express terms, created an implied contract with contract workers and that enforcement of this contract is not dependent on an employment relationship between her and LANS. Plaintiff seeks remand to allow the district court to address this allegedly overlooked claim. LANS responds that Plaintiff's sole claim in the district court was for breach of an implied contract of employment, and that this claim is fully resolved by the district court's conclusion that Plaintiff was not an employee of LANS. LANS contends, in other words, that Plaintiff did not preserve this issue for review on appeal.

**{39}** "In order to preserve an issue for appeal, [an appellant] must have made a timely and specific objection that apprised the district court of the nature of the claimed error and that allows the district court to make an intelligent ruling thereon." *Sandoval v. Baker Hughes Oilfield Operations, Inc.*, 2009-NMCA-095, ¶ 56, 146 N.M. 853, 215 P.3d 791; *see Benz v. Town Ctr. Land, LLC*, 2013-NMCA-111, ¶ 24, 314 P.3d 688 ("To preserve an issue for review on appeal, it must appear that [the] appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court." (internal quotation marks and citation omitted)).

**{40}** Our review of the record shows that Plaintiff pleaded and argued that she, as a LANS "subcontractor employee" had a cause of action for breach of an implied contract *of employment.* To the extent Plaintiff claims on appeal that she preserved an implied contract claim that does not require employment, we do not agree. At the hearing where the district court announced its decision, Plaintiff's sole argument was that she was a joint employee of LANS and that LANS' policies created an implied contract of employment prohibiting discrimination or harassment. When the district court ruled at the conclusion of that hearing that there was no genuine issue of material fact as to whether LANS was Plaintiff's employer and stated, "[T]herefore the [c]ourt finds that summary judgment is appropriate on all claims because each claim requires that an employee relationship be established by the plaintiff between herself and the defendant," Plaintiff did not object or ask the court for a ruling on the implied contract claim it claims it preserved, despite being invited by the court to raise any additional issues or questions for the court. The appellant not having invoked a ruling from the district court, we will not consider her claim on appeal.

**{41}** Finally, we reject Plaintiff's assertion that remanding to allow the district court to rule on this unpreserved issue is an appropriate remedy. An appellant's failure to preserve a claim for appeal requires that we affirm the district court's decision. *See, e.g.*, *State ex rel. Child., Youth & Fams. Dep't v. Johnny S., Sr.*, 2009-NMCA-032, ¶ 2, 145 N.M. 754, 204 P.3d 769 (affirming "on the basis of lack of preservation").

**CONCLUSION**

**{42}** For the reasons stated, we affirm the district court's grant of summary judgment and dismissal of the complaint.

**{43}   IT IS SO ORDERED.**

**JANE B. YOHALEM, Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**KATHERINE A. WRAY, Judge**